(No. 22579.—

THE PEOPLE *ex rel.* Hirsch E. Soble *et al.* Petitioners, *vs.*
JOSEPH L. GILL, Respondent.

*Opinion filed October 22, 1934—Rehearing denied Dec. 13, 1934.*

Hirsch E. Soble, and Albert Langeluttig, *pro sese.*

Frederick Arnd, and Hiram T. Gilbert, for respondent.

Mr. Justice Herrick delivered the opinion of the court:

Pursuant to leave granted, the relators filed their petition for *mandamus* in this court against the respondent, as clerk of the municipal court of Chicago. The petition

challenges the constitutionality of an amendment to section 56 of the Municipal Court act (Laws of 1931, p. 420; Smith's Stat. 1933, chap. 37, par. 416, p. 973; Cahill's Stat. 1933, chap. 37, par. 449, pp. 956-958;) which permits the city council of the city of Chicago, by a two-thirds vote of its members, upon the recommendation of two-thirds of the judges of the municipal court, by ordinance or ordinances, to make such changes in or additions to the provisions of such section with respect to costs as may be deemed expedient. The defendant has answered the petition. The answer raises no issue of fact and we have treated it as a demurrer to the petition.

Prior to 1931 section 56 definitely fixed the fees of the clerk of the municipal court in connection with civil suits instituted in that court. The change in such section made by the amendment of 1931 was to add the clause under consideration here. The act of 1931 amended not only section 56 but seventeen other sections. (Laws of 1931, pp. 420-434.) The entire series of amended sections was submitted, in accordance with the referendum contained in such act, to the legal voters of Chicago at the general election held November 8, 1932, and was consented to by them. Subsequent to the election two-thirds of the judges of the municipal court presented to the city council of the city of Chicago a schedule of costs applicable to the municipal court, with the recommendation of the judges that such schedule of costs be adopted. Thereafter the city council, by a vote of two-thirds of its members, passed an ordinance fixing the costs as so recommended by the municipal court judges in such schedule.

In determining whether such act violates any of the provisions of the State constitution in the manner charged, we meet certain fundamental rules which are the sentinels always actively on duty in protecting the constitution against attacks and whose challenges must be heeded. The presumption is that the act is valid. Before this presumption

is overcome there must be a reasonable belief that the legislature has exceeded its authority. (*First Nat. Bank* v. *Wedron Silica Co.* 351 Ill. 560; *Mitchell* v. *Lowden,* 288 id. 327; *People* v. *McBride,* 234 id. 146; *People* v. *Beak,* 291 id. 449.) It is only where there is a clear conflict between the terms of the act and some provision of the constitution that the court is justified in holding the act unconstitutional. Doubt and uncertainty must yield to the legal presumption in favor of the validity of the act. *Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504; *People* v. *McBride, supra; Joel* v. *Bennett,* 276 Ill. 537; *Victor Chemical Works* v. *Industrial Board,* 274 id. 11.

It is contended by the petitioner that the amendment to section 56 violates article 3 and section 1 of article 4 of our constitution. In support of such charges it is urged that article 3 prohibits the judiciary from exercising legislative functions, and section 1 of article 4 reposes the entire legislative power of the State of Illinois in the General Assembly.

In passing upon the act in question we must bear in mind that section 34 of article 4, being the constitutional amendment of 1904, empowered the legislature to pass laws establishing a local municipal government in and for the city of Chicago, and, with the consent of the voters of the city, to pass any laws it deems requisite, limited only by the restrictions imposed by such amendment. The constitutional amendment was legally adopted. (*City of Chicago* v. *Reeves,* 220 Ill. 274.) The establishment of a municipal court for the city of Chicago is germane to and part of the plan contemplated by such constitutional amendment for the establishment of a local government for the city. *People* v. *Olson,* 245 Ill. 288; *City of Chicago* v. *Reeves, supra.*

One of the provisions of the constitutional amendment is that "the General Assembly may pass all laws which it may deem requisite," etc. The fact that an act prop-

erly within the purview of this constitutional amendment may be a local law pertinent or applicable to the city of Chicago alone does not render such act unconstitutional. (*City of Chicago* v. *Reeves, supra.*) Subdivision 5 of section 56, enacted prior to our present Practice act, required a defendant, at the time of entering his appearance, if he desired a jury, to file a written demand therefor and pay the clerk six dollars. Although this statutory provision applied to no other court it was held constitutional. (*Williams* v. *Gottschalk,* 231 Ill. 175; *Morrison Hotel Co.* v. *Kirsner,* 245 id. 431.) The act creating the municipal court, which act was ratified by a vote of the people of Chicago, made the judges of the municipal court a part of the corporate authority for the administration of the act. (*People* v. *City of Chicago,* 310 Ill. 534.) Some of those corporate acts required to be performed by said judges are the determination of the number of deputy bailiffs of the court to be appointed by the bailiff, (sec. 17,) and the number of deputy clerks and their salaries (sec. 15). In discharging these duties imposed upon them by the statute, such judges are not exercising "judicial powers" within the ordinary meaning of such term, but are functioning as a portion of the administrative corporate machinery set up by the Municipal Court act for the administration of that act.

Numerous authorities are cited by the relators that judges and courts may not order costs taxed nor fix the amount thereof except as authorized by statute, and that the establishment of a schedule of fees payable to the clerk of the court is a legislative function. We have no quarrel with any of the authorities but they are not apropos of the issue here. No power in the legislative plan for the fixing of the fees of the municipal court is conferred upon any of the judges of that court. The only power granted them by the amendment is to recommend changes in or additions to the amount of legally taxable costs as such

judges may deem expedient. The judges make no allowances of costs not authorized by the statute. No power is delegated to the judges to fix costs. Under the terms of the amendment in question the judges of the municipal court act in an advisory capacity, only. They pronounce no judgment, make no judicial order, interpret no law, perform no judicial functions, and as officers of such court they exercise no legislative powers.

We are next concerned with whether the legislature could properly delegate to the city council the power to enact an ordinance fixing and regulating the fees to be charged litigants as costs in causes instituted in the municipal court. It is urged in support of this contention "that the operation of the municipal court of Chicago is a general and not a local concern." To fortify this position, counsel for the relators cite *People* v. *Board of County Comrs.* 355 Ill. 244, 250. It is true that such statement, in substance, is made in the opinion in that case. In the connection in which the expression was made the statement is correct. The people of Chicago, alone, are not concerned with the operation of the municipal court, but the people of the whole State are in a broad sense concerned with the operation of such court and with every court in the State. The issue in *People* v. *Board of County Comrs. supra,* involved the validity and constitutionality of the amendment to section 25 of the Municipal Court act, which provides that the fees of the jurors of such court should be paid by the county of Cook rather than by the city of Chicago, as was the law prior to the amendment. The amendment introduced no new principle into our statute law. The statute, which has been in force for over thirty years, providing for city courts generally, requires the fees of grand and petit jurors performing jury service in any such city court to be paid out of the county treasury. (Cahill's Stat. 1933, chap. 37, par. 383, sec. 19, p. 942; Smith's Stat. 1933, par. 351, p. 958.) Nothing said in

the *Board of County Comrs. case* tends to alter the position of the municipal court as a local court of the city of Chicago. It is fundamental that provision for the payment of costs or fees to be paid by the parties litigant in the municipal court are properly included in the act creating such court. While the fixing of costs to be charged by way of fees to be paid the clerk of the municipal court is in a comprehensive sense a matter of public concern, so within the same import are all laws of the State. The matter of costs as a means of providing revenue to assist in the payment of the expense of the maintenance and operation of the municipal court is a matter of local concern especially pertinent to the tax-payers of the city of Chicago, who must provide the funds necessary to discharge any deficit in the operation of such court. There is no question but that the legislature may enact legislation fixing such costs.

Article 4 of the constitution relates to the legislative department of our State government. Any amendment to that article legally passed and adopted may be written into that article which might lawfully have been embraced within it at the time the constitution was adopted. The fact must not be overlooked at any time in the consideration of section 34 that no law based upon a provision of that section affecting the municipal government of the city of Chicago can take effect until such law has been consented to by a majority of the legal voters of the city voting on the issue at an election duly held. (*People* v. *City of Chicago, supra.*) By the terms of this constitutional amendment a new form of legislative procedure for the enactment of statutes, in addition to the method existing at the time of the adoption of the constitutional amendment, was enacted. The general method in the passage of laws is the enactment of such laws by the General Assembly alone, such laws being subject to all the restrictions and limitations contained in the constitution. The other

method, being the method added by the amendment to section 34, is the passage of laws for the municipal government of the city of Chicago, by the General Assembly and the legal voters of the city of Chicago, which laws are generally subject only to such restrictions as are specifically named in such constitutional amendment.

This court will take judicial notice of the fact that the municipal court, with its thirty-seven judges, annually transacts a tremendous volume of business. The clerk and bailiff are each required to keep accurate accounts of all moneys collected by them or their deputies, and such accounts, under the direction of the chief justice of such court, are required to be audited monthly. The chief justice and the associate justices, by reason of their positions in such court, are more familiar with the income and expense of the operation of the court than is the General Assembly.

The city council of Chicago is the legislative body of that corporate municipality. The legislature has by article 5 of the Cities and Villages act delegated to cities the power to legislate on many subjects pertinent to the operation of city government. The General Assembly cannot delegate its general legislative authority, but it may lawfully empower others to do what it as a legislative body may lawfully do. At the time of the passage of the amendment to section 56, Chicago, with its dense population and its many complex problems, presented a condition which the General Assembly obviously thought could be more intelligently and efficiently handled by those living within the city and in touch with the work of the court than by the legislature itself. Where a municipal body is in a position to have more knowledge on the subject or do those things more advantageously and understandingly than the legislative body, the legislature may lawfully confer such legislative power on the municipality. The delegation of such power is not violative of the constitution. *Chicago Union*

*Traction Co. v. City of Chicago,* 199 Ill. 484; *Chicago, Milwaukee and St. Paul Railway Co. v. Lake County,* 287 id. 337.

The municipal corporation the city of Chicago is organized under the general Cities and Villages act. It is fundamental that the legislature may grant to a city or village the power to legislate with reference to matters purely local. This general principle is emphasized as to the city of Chicago by virtue of section 34 of article 4. The municipal court was created under the power granted by the amendment to article 4. The court is a part of the plan for local self-government conceived and created by virtue of the legislature having acted under the power granted it by such amendment to the constitution. Costs are a necessary incident of a court. The municipal court being local to the city of Chicago and being a part of the corporate project intended by such amendment to the legislative article, there is no valid constitutional objection to the legislature authorizing the city, speaking through its legislative body pursuant to the terms of the statute and consented to by its voters, to determine the amount of costs to be paid by parties litigant in such court. The amendment to section 56 is not void because of any power delegated to the city council of the city of Chicago.

The amendment to section 56 did not, as urged by the relators, violate section 12 of article 10. That section relates only to the fixing of fees of State, county and township officers. The clerk of the municipal court is neither a State, county nor township officer.

The relators urge that the amendment to section 56 violates section 13 of article 4. The amendment to the act is entitled "An act to amend an act entitled 'An act in relation to a municipal court in the city of Chicago.'" The Municipal Court act is a complete piece of legislation. (*City of Chicago v. Reeves, supra.*) The title of the amendatory act is as broad as the original act. The orig-

inal section sought to be amended, as well as the amendment, is set forth in full in the legislative amendment. It was never contemplated by the framers of the constitution that the title of an act should be a table of its contents. The requirement of section 13 of article 4 on that subject is met if the title correctly, explicitly and clearly states the subject matter of the act so as to inform the members of the General Assembly and the general public of the subject and the interrelated matters pertaining to the subject, even though some of the provisions are diverse, where such provisions are integral parts in the completion of an effective and practical unit of legislation. *Reif* v. *Barrett,* 355 Ill. 104, 124, 125; *People* v. *Colegrove,* 354 id. 164; *People* v. *Monroe,* 349 id. 270; *People* v. *School Directors,* 267 id. 172.

It is further urged that the amendment violates section 13 of article 4 for another reason assigned, viz., that it falls within the purview of those acts incomplete in themselves, with new provisions commingled with old, so as to make it necessary to read two different legislative provisions in order to determine what the law is. From that premise it is argued that one, in order to know the present fees lawfully chargeable by the clerk of the municipal court, must read section 56 and also the ordinance passed by the city council and consented to by the legal voters of the city. While other cases are cited by the relators to sustain this position, they rely chiefly on *Broder* v. *Krenn,* 334 Ill. 256. The salient point of the decision in that case was, that section 56 of the Municipal Court act, as amended in 1921, is void in amending the provision of section 30 requiring the plaintiff in a first-class case to demand a jury trial on filing suit, for the reason that section 30 is not set out at length in the new act and is not repealed by implication, because some of its provisions are not affected by the amendment to section 56 but must be read together

with section 56 in order to determine the law on the subject of jury trials and non-suits in the municipal court. The rule announced in the *Krenn case* is sound, but the situation presented here is not the same. Here there is no conflict between sections of the same act. No section is amended which repealed another section of the act without such fact being revealed by the title, nor is one required to read two sections of the act in order to know the amount of costs that can be lawfully exacted from a litigant in the municipal court. The act gives notice to him who reads, that the city may, under the conditions named, legislate on the subject of costs in the municipal court. The fact that in order to learn the amount of costs payable to the clerk of the municipal court one may have to read the ordinance passed under the provisions of a statute enacted pursuant to section 34 of article 4 of our constitution does not render the amendment to section 56 void. The amendment to section 56 is not violative of section 13 of article 4 of the constitution and is within the powers granted by section 34 of article 4 of the constitution.

While the point is not strongly urged, yet there is complaint made in the argument that the costs as fixed by the ordinance in question are excessive and unreasonable. The legislature by the act of 1929 recognized that the costs chargeable in the circuit and superior courts of Cook county were not adequate and by such act increased certain of the fees and costs chargeable in such courts. (Cahill's Stat. 1933, par. 47, sec. 33, p. 1427; Smith's Stat. 1933, par. 51, p. 1478.) If it was proper to increase the costs in the circuit and superior courts of Cook county, the same reason which impelled the passing of the act of 1929 increasing the amount of such costs would apply to municipal courts. In any event, the schedule of costs is not excessive or unreasonable.

We have considered all the issues raised on the record by the relators, and although all of such issues have not

been discussed at length in this opinion, we have decided the same adversely to the contention of the relators.

The demurrer to the petition for the writ of *mandamus* is sustained and the petition is dismissed.

*Demurrer sustained and petition dismissed.*