(No. 24423.—)
THE PEOPLE *ex rel.* William H. Moshier *et al.* Appellees,
*vs.* THE CITY OF SPRINGFIELD *et al.* Appellants.

*Opinion filed February 22, 1939.*

542

STONE, J., specially concurring.
SHAW, C. J., and WILSON, J., dissenting.

HUGH J. DOBBS, City Attorney, for appellants.

LONDRIGAN & LONDRIGAN, for appellees.

ALEXANDER H. MARSHALL, and THOMAS A. MATTHEWS, *amici curiæ*.

Mr. JUSTICE JONES delivered the opinion of the court:

The circuit court of Sangamon county awarded a writ of *mandamus* commanding the city of Springfield and its officers to pay relators and all the other members of its fire department a minimum salary of $175 per month under the provisions of an act of the legislature effective June 29, 1937, and to levy taxes for that purpose. (Laws of 1937, p. 344.) The act defines "fireman" as any member of a regularly constituted fire department appointed or commissioned to perform fire-fighting duties, including the fire chief, assistant fire chief, captain, engineer, driver, ladder man, hose man, pipe man, and any other member thereof. It provides that the salary to be paid a fireman shall not be less than $150 per month in cities, villages and incorporated towns having a population of 10,000, or more, but less than 25,000; $175 per month in municipalities having a population of 25,000, or more, but less than 150,000, and that the act shall not apply to special firemen temporarily employed.

The city of Springfield has a population of 71,900. At the time the act became effective, the first quarter of the city's fiscal year, beginning March 1, 1937, had expired. The amount appropriated in the appropriation ordinance passed during the first quarter of the fiscal year for paying members of the fire department was insufficient to pay each of them $175 per month for the whole of the fiscal year. The city had adopted the Fire Protection Tax act of 1929 (Ill. Rev. Stat. 1937, chap. 24, par. 838a, *et seq.*) which enabled it to levy a tax at a rate not exceeding two mills for fire protection. Under its provisions, the city appropriated and levied for the fiscal year 1937 approximately one mill for new equipment and the maintenance thereof, and the maintenance of buildings; no part of the appropriation or levy under the Fire Protection Tax act was for paying the compensation of the members of the fire department of the city.

The judgment awards a writ commanding appellants to pay relators and all other members of the city fire department, commencing July 1, 1937, a minimum salary of $175 per month; to levy on or before the third Tuesday of September, 1937, a sufficient tax in addition to the one-mill tax previously levied, not exceedings two mills in the aggregate, to pay such salaries until the close of the present fiscal year; to appropriate, in the 1938 appropriation ordinance, a sufficient amount from the funds collected by reason of such tax levy for the payment of all salaries due at the close of the 1937 fiscal year, and to include in the 1938 appropriation bill and tax levy, an amount which will be sufficient for the payment of the minimum salary of $175 per month to the members of the fire department of the city of Springfield.

The grounds urged for reversal are that the Firemen's Minimum Wage act is unconstitutional in that it is special legislation in contravention of section 22 of article 4 of the constitution, and creates a corporate debt of the city without its consent, in violation of section 10 of article 9; that the act is incomplete, and is in conflict with existing statutes and is, therefore, void; that the judgment invades the legislative field in violation of the due process clause of the constitution; that a prior appropriation by the city is a statutory condition precedent to the levy of the tax; that no appropriation has been made to pay the increase in the firemen's salaries; that the expenditure of funds by municipal officers, without an antecedent appropriation, is a criminal offense; and that a writ of *mandamus* cannot be lawfully issued to compel the performance of an unauthorized or illegal act. Appellees contend that neither the statute in controversy, nor the judgment, is subject to any of the claims urged. We cannot concern ourselves about the wisdom of the legislation but must inquire whether the act is a valid exercise of the police power of the State. By leave of court, several other cities within the terms of the

act have filed a brief and argument, as *amici curiæ,* in support of the contentions of appellants.

It is a matter of common knowledge that ownership of property in any municipality, no matter how small, is seldom confined to the inhabitants, but in practically all municipalities some of the property is owned by non-residents. In many cases the stock of large buildings, banks, manufacturing and mercantile corporations located in a particular city is widely held. Hotels are continuously occupied by large numbers of people, both local and transient, who are always exposed to the possibility of disastrous fires. Schools, hospitals and other public buildings with their occupants, are exposed to the same risk. Thus, fire protection is a thing not only of local concern, but in which the general public has a vital interest. The owners of property and the general public are not the only ones affected by legislation for fire protection. There is a vast army of men employed in that occupation, which is obviously fraught with hazards uncommon to many other callings. Such hazards are, in a large degree, measured by the size of the municipality. In the interest of the public, as well as themselves, firemen are entitled to receive adequate compensation for their services, commensurate with such hazards. Otherwise, few men would seek that avenue for a livelihood. The protection of life and property from fire conserves the resources of the country, and is, therefore, a matter of public welfare. It is also a matter of common knowledge that it costs more to live in a city than it does in a hamlet, and that the cost varies with the size of the community. It is to the interest of the State that its citizenry be adequately housed and fed. Such a policy tends to prevent indigency, with its corresponding burdens on the public, and to maintain the strength and health of the citizens. This, too, adds to the resources of the country and is embraced within the public welfare. The physical welfare of the citizens is of so much importance to the

State, and has such a direct relation to the general welfare, that laws tending to promote that object are proper under the police power which is inherent in the State. The legislature is vested with a large discretion in determining what measures are necessary to secure public welfare. Such statutes are upheld, if possible, and it is only when the legislature goes beyond its power that they are declared invalid. *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com.* 364 Ill. 213; *Hunt* v. *Rosenbaum Grain Corp.* 355 id. 504.

The manifest purpose of the act in controversy is to insure reasonable living conditions to firemen in municipalities having a population between 10,000 and 150,000. For the reasons above set out, it is obvious that such purpose is directly connected with and is a part of the general welfare. While arbitrary legislative classification of municipalities and other political subdivisions, based only on difference in population, cannot be sustained under section 22 of article 4 of the constitution, they may be classified for purposes of legislation on the basis of population, if such basis has some reasonable relation to the purpose and object of the legislation, and in some rational degree accounts for the variant provisions of the enactment. (*Mathews* v. *City of Chicago,* 342 Ill. 120; *Martens* v. *Brady,* 264 id. 178; *People* v. *Kaelber,* 253 id. 552; *Booth* v. *Opel,* 244 id. 317; *People* v. *Knopf,* 183 id. 410; *Stewart* v. *Brady,* 300 id. 425.) A law is not to be regarded as class legislation merely because it affects one class and not another, provided it affects all members of the same class, alike. Whether a law is general, local or special does not depend upon the number of things within the scope of its operation. To be general, it is not necessary that an act operate in every place or upon every person in the State, but if every place or person brought within the relations or circumstances provided for is affected by the law, the act is general. An act is not local or special merely be-

cause it operates in but one place or upon a particular class of persons or things, provided there is a reasonable basis for the legislative classification. A law may be, general notwithstanding the fact it may operate in only a single place, where the conditions necessary to its operation exist. (*Hunt* v. *Rosenbaum Grain Corp. supra; People* v. *City of Chicago,* 349 Ill. 304; *Mathews* v. *City of Chicago, supra; People* v. *Borgeson,* 335 Ill. 136.) Classifications of persons or objects for purposes of legislative regulation are not open to constitutional objection if they be not arbitrary but are based upon some substantial difference bearing proper relation to the classification. (*Lueth* v. *Goodknecht,* 345 Ill. 197.) The difference in the cost of living, and in the hazards of the occupation, in municipalities within the two classifications in the act, and in those not embraced within its terms, furnishes a reasonable basis, under the general welfare and the police power, for such a classification. It bears a direct relation to the object and purpose of the legislation. Therefore, it is not in violation of the constitutional provision prohibiting local or class legislation.

The next contention of appellants is that the act violates section 10 of article 9 of the constitution, prohibiting the legislature from imposing taxes upon a municipality for corporate purposes. The respective functions and powers of the State and of municipalities under the constitution have long been settled. The legislature possesses every power not delegated to some other department or to the Federal government or not denied to it by the constitution of the State or of the United States. (*Fenske Bros.* v. *Upholsterers International Union,* 358 Ill. 239; *Greenfield* v. *Russel,* 292 id. 392; *People* v. *Thompson,* 155 id. 451; *Harris* v. *Board of Supervisors,* 105 id. 445.) The legislature may delegate to municipalities the power to legislate with reference to matters purely local, but it may not delegate its general legislative authority. (*People* v. *Gill,* 358 Ill. 261.) The powers, duties and liabilities of municipal

corporations, unless restrained by constitutional limitations, are wholly under the control of the General Assembly. (*People* v. *Board of County Comrs.* 355 Ill. 244.) The power even extends to the right to abolish municipal corporations, with or without the consent of the people in the locality to be affected. (*People* v. *Kelly,* 357 Ill. 408; *Wilson* v. *Board of Trustees,* 133 id. 443; *Bush* v. *Shipman,* 4 Scam. 186.) The power to levy taxes is inherent in the State, except in so far as such authority is limited by the constitution. The sovereign speaks through the legislature, and while the legislature may not directly levy a tax, it may grant to the different municipalities the power to levy such tax and at such rates as in its discretion are proper, restrained only by inhibition of the constitution. (*People* v. *Mills Novelty Co.* 357 Ill. 285.) Sections 9 and 10 of article 9 of the constitution withdraw from the legislature the power directly to impose taxes for purely local, nongovernmental purposes. If the purpose of the tax is local and not general, the legislature cannot compel a municipality or subdivision of the State to levy, nor can the legislature itself impose, such a tax. From this, it follows that unless the legislation is for a local corporate purpose it is not within the constitutional inhibition. This court early recognized the difficulty of laying down a comprehensive definition of the term "corporate purpose," which could be universally applied to every circumstance.

In *Taylor* v. *Thompson,* 42 Ill. 8, in discussing whether a tax to pay bounties to soldiers, imposed by a referendum under an enabling act, was for a corporate purpose, it was said: "We may define this phrase to mean a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it." Shortly thereafter, in *Board of Supervisors* v. *Weider,* 64 Ill. 427, Mr. Justice Breese said the question of what is a corporate purpose was answered, in part, in the *Taylor case, supra.* In discussing the difficulty of determining with

precision the meaning of the term in the sense of the constitution, the opinion says it is less difficult to decide what is not such a purpose, and the true doctrine is, that corporate purposes are such purposes, and such only, as are germane to the objects of the creation of the municipality, at least such as have a legitimate connection with those objects, and a manifest relation thereto. These pronouncements have been referred to in numerous later decisions. (*Kocsis* v. *Chicago Park District,* 362 Ill. 24; *People* v. *City of Chicago,* 351 id. 396; *Elsenau* v. *City of Chicago,* 334 id. 78; *Robbins* v. *Kadyk,* 312 id. 290; *Stone* v. *City of Chicago,* 207 id. 492; *Wetherell* v. *Devine,* 116 id. 631; *Burr* v. *City of Carbondale,* 76 id. 455; *People* v. *Dupuyt,* 71 id. 651.) In none of those cases is there any holding that every tax which meets the tests mentioned is necessarily for a local corporate purpose. An examination of these and other decisions of this court, furnished by exhaustive briefs of the parties, discloses no effort at a precise or comprehensive definition. In each case where the term was discussed, the question was whether the particular tax should be classified as for a local corporate purpose. In order to determine that question it was necessary to prescribe what must be shown in order to constitute such a purpose, and to decide whether the particular facts involved did or did not meet the test of such requisites. The decisions go that far and no farther.

This court has never held or indicated that delegating a governmental function to a municipality converts it into a local corporate purpose within the purview of the constitution. Nor could there be any justification for such a holding. The exercise and control of local corporate functions, when delegated to a municipality, are committed exclusively to the municipality. The legislature may not interfere except by withdrawing or modifying the function delegated. To say a governmental function becomes exclusively local when delegated, would deprive the legislature of the

right to exercise the police power, a function of which it cannot be divested, and which it cannot delegate exclusively. (*People* v. *Gill, supra.*) If exclusively delegated, the only way in which the legislature could exercise a governmental power would be by withdrawing it from municipalities, a result not to be contemplated. The local administration by a municipality of a delegated governmental function, is, in a limited sense, exercising a corporate function, in that one of the purposes of a municipal corporation is the administration, as an agency of the State, of delegated governmental functions. It is in that limited sense, only, that it may be said to be a corporate purpose. Expressions in *People* v. *Salomon,* 51 Ill. 37, and other former decisions of this court, are not to be construed as holding otherwise. It is, therefore, obvious that the exercise by a municipality of a delegated governmental power does not change the character of the power. The legislature may employ a municipality as an enforcing agency, but the municipality takes no more than an agency for the State. The power, in all its aspects, remains in the legislature, unchanged and unaffected by the delegation to the agent. It is delegated to smaller embraced municipalities only that it may be more effectively exercised. (*Board of Trustees* v. *Comrs. of Lincoln Park,* 282 Ill. 348.) We have repeatedly held that corporate purposes, within the meaning of the foregoing constitutional provision, do not include functions which a municipal corporation performs in its governmental capacity as an agency of the State. The legislature, therefore, may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State, although the performance of the duty will create a debt to be paid by local taxation. *People* v. *Board of County Comrs. supra; People* v. *City of Chicago,* 351 Ill. 396; *St. Hedwig's Industrial School* v. *County of Cook,* 289 id. 432; *People* v. *County of Williamson,* 286 id. 44; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,*

287 id. 337; *City of Chicago* v. *Manhattan Cement Co.* 178 id. 372; Cooley on Taxation, p. 686.

Appellants insist that these holdings, in cases where a county or other political subdivision of the State created *in invitum* was a party, are not applicable to a voluntary municipal corporation, because the first class named is merely a part of the State to which the sections of the constitution in controversy are not applicable. While it is true that in *Wetherell* v. *Devine, supra,* followed by *Raymond* v. *Hartford Fire Ins. Co.* 196 Ill. 329, and *Bolles* v. *Prince,* 250 id. 36, it is held that sections 9 and 10 of article 9 of the constitution are not applicable to counties or townships, but apply only to municipal corporations proper, no such distinction is made in any of the cases above cited, but the principle was applied without regard to any such difference. We so held in *People* v. *City of Chicago, supra.* The principle is directly applicable here. .

*Lovingston* v. *Wider,* 53 Ill. 302, *People* v. *Canty,* 55 id. 33, *City of East St. Louis* v. *Witts,* 59 id. 155, and *Hinze* v. *People,* 92 id. 406, relied upon by appellants, each involved a construction of the same statute providing for the appointment by the Governor, with the consent of the Senate, of three commissioners, who were to control the police department of the City of East St. Louis. The act provided that the commissioners should annually estimate what sum of money would be necessary for each fiscal year and report to the city council, which was required to appropriate such amount from the general fund of the city, and in case of the failure of the city council so to do, the commissioners were authorized to issue and dispose of certificates of indebtedness in the name of the city, which should be receivable in payment of city taxes. No limit was placed upon their power as to the amount they were authorized to raise or the price at which they should dispose of the certificates. The law was held unconstitutional, not because it provided for the appointment of police officers, but because it gave

to a body other than the corporate authorities of the municipality the power to create a debt against the city for which a tax could be levied. None of those cases is controlling or persuasive on the issues here. *Wetherell* v. *Devine, supra,* was a suit to restrain the city treasurer of Chicago from paying office rent and other expenses incurred by the board of election commissioners. The decision upholding the act providing for such payment is predicated on the fact that the people, by adopting the act, had consented to the tax. It is apparent that this case has no application to the suit at bar. Neither has *Gaddis* v. *Richland County,* 92 Ill. 119, or *People* v. *Dupuyt, supra,* any relevancy here. In the *Gaddis case* it was held the act challenged did not attempt to create a debt, and the alleged assent of the county was made under a void election. In the *Dupuyt case* the question was whether a township, in a county not under township organization, had the power, through its trustees of schools, to become a stockholder in a railroad company, with power to issue bonds and collect taxes. It was held the township had no such power.

*People* v. *Mayor,* 51 Ill. 17, and *Harward* v. *St. Clair and Monroe Levee and Drainage Co.* id. 130, also relied upon by appellants, were decided on the same ground as the East St. Louis cases above mentioned. In the *McCagg case* (51 Ill. 17) no question was raised as to the power of the legislature to impose a liability upon a municipality for a governmental purpose. The statute there in question required the officers of the city of Chicago to issue bonds for the purpose of paying for land taken for Lincoln Park, upon the requirement of the park commissioners created by the act, without submitting the question of creating the debt to the people of the city or its corporate authorities. It was held, under section 5 of article 9 of the constitution of 1848, which is the same as section 10 of article 9 of the present constitution, that the park commissioners were not corporate authorities of the city, and the legislature could not dele-

gate the power to impose corporate or local taxation to any other than the corporate authorities. Likewise, in the *Harward case, supra,* a private corporation was organized by a statute giving the commissioners named in the act the right to assess and control taxation. Vacancies could be filled by the survivors. It was held that the right of taxation cannot be granted to private persons or private corporations, and that "corporate authorities" within the meaning of the constitution, embraces only municipal officers elected or appointed by the population sought to be taxed by them, and consequently the statute was void. It is equally obvious that these cases have no application to the question in this case. However, it is significant that in the *McCagg case, supra,* this court said: "To what extent it [the constitutional provision] is to be construed as a limitation upon the power of local taxation directly by the legislature itself, it was not necessary in that case, [the *Harward case,*] nor is it in this, to decide. However strong the argument in favor of so construing it, there nevertheless may be cases where the legislature, without the consent of the corporate authorities, might impose taxes, local in their character, if required by the general good government of the State, because such taxes would not be merely and only for corporate purposes, as if one of the cities of the State should be insurgent, requiring the interposition of the military power, it will not be denied the State, on quelling the insurrection, could impose taxes upon the city to defray the expense of a resort to military power. So, if the police department of a city should fail to furnish reasonable security to life and property, the State, undoubtedly, might provide such force, and assess the city for the expense." This expression demonstrates that this court, at an early date, was committed to the doctrine that governmental functions, when delegated to a municipality, are so delegated to it as an arm or agency of the State, and the primary power still resides in the legislature. In *City of Chicago* v.

*Manhattan Cement Co. supra,* we quoted the foregoing excerpt from the *McCagg case,* and said the language clearly indicated it had not been intended to hold, in prior decisions, that the legislature might not create a debt against cities or counties and provide for the collection of the same under a proper exercise of the police power.

The ground upon which municipal corporations are exempted from liability for torts in the performance of governmental functions is stated in *Roumbos* v. *City of Chicago,* 332 Ill. 70, as follows: "So far as public corporations of any class and however incorporated exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the State—they should be deemed agencies of the State and not subject to be sued for any act or omission occurring while in the exercise of such power unless by statute the action be given." To the same effect are *Wilcox* v. *City of Chicago,* 107 Ill. 334; *Culver* v. *City of Streator,* 130 id. 238.

In the *Roumbos case, supra,* we said the fire department maintained by a municipal corporation is also regarded as belonging to the public or governmental branch of the municipality so as to relieve the municipality of liability for injuries to persons or property resulting from the negligence of officers or employees connected with the maintenance and operation of the department. The opinion cites and quotes with approval from *Wilcox* v. *City of Chicago, supra.* The *Wilcox case* was a suit against the city of Chicago to recover damages sustained in a collision between the plaintiff's carriage and a hook and ladder wagon of the city, through the alleged negligence of the driver of the ladder wagon. In denying a recovery, we quoted from Dillon on Municipal Corporations (1st ed. sec. 774) as follows: "So, although a municipal corporation has power to extinguish fires, to establish a fire department, to appoint and remove its officers, and to make regulations in respect to their govern-

ment and the management of fires, it is not liable for the negligence of the firemen appointed and paid by it, who, when engaged in the line of their duty, upon an alarm of fire ran over the plaintiff, in drawing a hose reel belonging to the city, on their way to the fire; nor for injuries to the plaintiff caused by the bursting of the hose of one 'of the engines of the corporation, through the negligence of a member of the fire department. The exemption from liability is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature— is one in which the corporation has no particular interest, and from which it derives no special benefit in its corporate capacity; that the members of the fire department, although appointed by the city corporation, are not agents and servants of the city, for whose conduct it is liable, but they act rather as officers of the city, charged with a public service, for whose negligence in the discharge of official duty no action lies against the city without being expressly given, and the maxim *respondeat superior* has, therefore, no application."

In *State of Nebraska* v. *City of Omaha* (112 Neb. 694, 200 N. W. 871) it was held that a law imposing upon municipal corporations the obligation to levy a tax to pay hydrant rentals is not violative of the constitution providing: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." The opinion states the question is whether the tax to be levied was for a corporate purpose or whether it has relation to the exercise of the governmental power of the State through the agency of the municipal corporation, and holds that the location and maintenance of hydrants in the city streets and supplying them with water are directly connected with the performance of a governmental function. The primary purpose of such hydrants is for fire protection, and secondarily, or perhaps of equal importance, for the flushing of sewers and cleaning

of streets. All these operations are carried on for the public welfare and safety, are for the protection of the health and safety of the public and find their authority in the general police power of the State which has been, in part, delegated to the municipality. The opinion cites with approval *City of Chicago* v. *Manhattan Cement Co. supra; People* v. *County of Williamson, supra,* and *Chicago, Milwaukee and St.Paul Railway Co.* v. *County of Lake, supra.*

In *Luhrs* v. *City of Phoenix,* 83 Pac. (2d) (Ariz.) 283, the Supreme Court of Arizona upheld acts of the legislature providing for police pensions and fixing minimum salaries for city policemen and firemen. Under the provisions of the Arizona constitution the city of Phoenix adopted what is known as a "Freehold Charter." The constitution provides for approval of such charters by the Governor, when not in conflict with the constitution or laws of the State, and upon such approval the charter becomes the organic law of the city. The Arizona court held that such a freeholders' charter was intended to give its possessor rights and privileges in matters of local concern and municipal affairs, free from legislative interference. This is comparable with the provisions of our constitution. The court held that the pensioning of policemen and fixing a minimum wage for policemen and firemen is of Statewide concern, and the statutes were valid on the ground they concerned governmental functions subject to the control of the legislature. The same doctrine prevails in Wisconsin, Missouri and Tennessee. *Van Gilder* v. *City of Madison,* 222 Wis. 58, 267 N. W. 25; *State* v. *Jost,* 265 Mo. 51, 175 S. W. 591; *Smiddy* v. *City of Memphis,* 140 Tenn. 97.

The fire department maintained by a municipal corporation is regarded as belonging to the public or governmental branch of the municipality. (*Roumbos* v. *City of Chicago, supra; Wilcox* v. *City of Chicago, supra.*) The purpose of the act being clearly not local, but directly related to the general welfare and to the governmental functions of the

municipalities affected, its provisions do not come within the inhibition of the constitution invoked by appellants.

The claims that the act is incomplete, in conflict with the existing statutory scheme, that the legislature failed to provide means for the lawful discharge or payment of the obligation created, and that the judgment invades the legislative field, cannot be sustained. The language of the act is clear and unmistakable. It has no ambiguity and there is no room for questioning the meaning of its terms. Cases cited by appellants where the terms of a statute were susceptible of different constructions, because vague or indefinite, have no application here. Two methods of complying with the act are available, under existing statutes, which are in no way in conflict with its terms. The salaries may be paid from the general revenue of the municipalities, or, if a municipality should find that method inexpedient because of curtailing other corporate functions, the Fire Protection Tax act may be adopted. Having delegated to municipalities the right to use either of the two methods, it was unnecessary for the legislature to specify which of the two should be used. The evident purpose of the Fire Protection Tax act is to enable municipalities to avail themselves of it when the local conditions make it expedient to do so.

The question raised as to the duty of the city to levy the tax for the year 1937 without a previous appropriation having become moot, need not be discussed. The statute is not invalid for any of the reasons assigned by appellants, and the judgment of the circuit court is, accordingly, affirmed.

*Judgment affirmed.*

Mr. Justice Stone, specially concurring:

I concur in the conclusion of the majority opinion that this court is bound to uphold the validity of the act assailed in this case as a valid exercise of the police power. I do not concur in some of the reasoning in the majority opinion

by which the judgment of the court is reached. It has been properly said therein that this court cannot question the wisdom, or lack of it, of the act. Whether the act unduly burdens municipalities to which it applies or restricts local self-government, are, unless within constitutional inhibition, matters of legislative policy, and however strongly courts may feel on the matter, relief on such phases may be afforded only by the General Assembly. The only question that this court may pass upon is whether the legislature has power to pass the act. That it has such power, unless prohibited by some provision of the constitution, is so well settled as to require no citation of authority. The question is solely, as I conceive it, whether the act before us is prohibited by the constitution. If it is not, its validity must be sustained.

An act of the General Assembly, though an exercise of the police power, is subject to constitutional limitations. The constitution is supreme. (*City of Mt. Vernon* v. *Julian,* 369 Ill. 447; *Sutter* v. *People's Gas Light and Coke Co.* 284 id. 634; *Ritchie* v. *People,* 155 id. 98; *Town of Lake View* v. *Rosehill Cemetery Co.* 70 id. 191.) As set out in the majority opinion, section 10 of article 9 of the constitution declares "the General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." In my opinion, the question upon which the decision in this case must turn is whether fixing the wages of firemen by an act of the General Assembly is an invasion of this limitation. Obviously, unless it is, the act is valid.

Living conditions cannot, in my judgment, be made a basis for sustaining this act. While, in cases of emergency or those involving a charity, living conditions have been recognized as the basis of remedial legislation, yet to say that living conditions of firemen justify the fixing of a minimum wage by legislative enactment is to open the act to attack by reason of lack of uniformity and to bring it within

the constitutional provision against special legislation. To say that the city may impose a debt, resulting in a tax on a municipality, to increase the income of firemen on the ground that living conditions are a matter of general police power, is to render the act subject to constitutional prohibition against class legislation, since there is no reasonable basis of distinction between living conditions affecting firemen and living conditions surrounding clerks, stenographers or other employees of the same city. I do not believe this act can be declared valid on that ground.

Section 10 of article 9 of the constitution prohibits levying a tax upon a municipality for corporate purposes. That which creates a debt requiring a tax to pay it, is, in effect, the levy of a tax. Is the debt created by this act a debt for corporate purposes? The rule is generally recognized that so far as public corporations of any class, however incorporated, exercise powers conferred upon them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the State or provide for the general welfare—they are to be deemed agencies of the State, and, in so far as they exercise powers voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants—they act in their private corporate capacity. *Roumbos* v. *City of Chicago,* 332 Ill. 70; 1 Beach on Public Corporations, sec. 261.

What are corporate purposes has been considered in numerous decisions of this court. (*People* v. *City of Chicago,* 351 Ill. 396; *Robbins* v. *Kadyk,* 312 id. 290; *Stone* v. *City of Chicago,* 207 id. 492; *Board of Supervisors* v. *Weider,* 64 id. 427.) It is held in these cases that corporate purposes are only such as are germane to the objects of the creation of the municipality—at least such as have a legitimate connection with those objects and a manifest relation thereto. It is a rule of general acceptance that the General Assembly may compel a corporation to perform any duty

which relates to the general welfare and security of the State, although the performance of such duty would create a debt to be paid by local taxation. (*People* v. *City of Chicago, supra; St. Hedwig's Industrial School* v. *County of Cook,* 289 Ill. 432; *Board of Trustees* v. *Lincoln Park Comrs.* 282 id. 348; *City of Chicago* v. *Manhattan Cement Co.* 178 id. 372; *Wetherell* v. *Devine,* 116 id. 631; *Dry* v. *Davidson,* 115 S. W. (2d) (Tex.) 689; *State* v. *Love,* 89 Neb. 149, 131 N. W. 196; *Luhrs* v. *City of Phoenix,* 83 Pac. (2d) (Ariz.) 283.) The fact that a power or function is delegated to a city is not, of itself, conclusive evidence that the State does not also retain the right to legislate upon it, even though so to do would impose a tax on a municipality. Where the State delegates governmental functions to a municipality, such as the regulation of public health and the like, such delegation is as a convenience in the execution of such function of government, and in it, the city, though exercising governmental functions, is acting as an aid or agent of the State in the more convenient exercise of the power. The State no less retains the power to legislate on the subject. So it cannot be said that all governmental powers delegated to municipalities become by such delegation, or for any other reason, solely corporate purposes within the meaning of section 10 of article 9 of the constitution, but they may remain rather a delegation of State governmental functions to a municipality. The cases show, and the scheme of our State government indicates, the purpose that the General Assembly be empowered to impose, by legislation, taxes against the property of municipalities in two general classes of cases (a) where a function of government has not been delegated to a municipality and which it derives from its organization as a municipality no power to perform, as police pensions and the like, and (b) those functions of government delegated to the municipality but as to which the State, by reason of the public interest and welfare involved, retains and must, by the very nature

of the function, retain, the power of legislation, as health regulations and the like. As to the latter, the power delegated to municipalities is to act as agents of the State.

In the early case of *Wilcox* v. *City of Chicago*, 107 Ill. 334, the difference between powers conferred and duties imposed upon a city by legislative enactment, and the question whether the General Assembly has power to impose regulations governing fire departments, were under consideration. In that case, exemption from liability for injuries caused by firemen was placed upon the ground that the services performed by them and by the municipal corporation are in obedience to an act of the legislature, one in which the corporation, as such, has no particular interest and, as such, derives no special benefit, and that the members of the fire department, although appointed by the municipal corporation, are not the agents and servants of the city for whose conduct it is liable, but they act rather as officers of the city, charged with a public duty. The rule, as adopted and announced, not only by this court but by the great majority of the courts in this country, is that a fire department maintained by a municipal corporation belongs to the public or governmental branch of the municipality. *Tindley* v. *Salem,* 137 Mass. 171, 50 Am. Rep. 289; *F. & M. Ins. Co.* v. *Keeseville,* 148 N. Y. 46, 42 N. E. 405; *Boyd* v. *Ins. Patrol,* 113 Pa. 269, 6 Atl. 536; *Shanewerk* v. *Ft. Worth,* 11 Tex. Civ. App. 271, 32 S. W. 918; *Wilde* v. *Paterson,* 47 N. J. L. 406, 1 Atl. 490; *Saunders* v. *Ft. Madison,* 111 Iowa 102, 82 N. W. 428; *Brink* v. *Grand Rapids,* 144 Mich. 472, 108 N. W. 430; *Hillstrom* v. *St. Paul,* 134 Minn. 451, 159 N. W. 1076.

Are these governmental functions of the municipality vested alone in it or do they have broader features which result in the retention by the State of the exercise of their regulation by the General Assembly? Dillon on Municipal Corporations, first edition, section 774, states that the operation of a fire department is in obedience to acts of the General Assembly and one in which the corporation has no par-

ticular interest, derives no special benefit in its corporate capacity, and that firemen are not, therefore, agents or servants of the city for whose conduct it is liable, but they act rather as officers of the city, charged with a public service. This view is cited with approval in *Roumbos* v. *City of Chicago, supra.* It is generally conceded that the maintenance of police and fire departments is in the exercise of the police power, and it seems clear that those functions, while delegated to municipalities by the State, are functions of government as to which the State, in the exercise of police power, retains final control. That the State does retain control over fire departments and firemen is evidenced by the act pertaining to police and fire commissioners (Ill. Rev. Stat. 1937, chap. 24, par. 843, *et seq.*) and like provisions of statutes prohibiting interference with the discharge of duties of firemen or with fire apparatus and the like.

*People* v. *City of Chicago, supra,* and cases there cited, are, in my opinion, binding upon this court in this matter. In that case, certain persons appointed as probation officers by the municipal court of the city of Chicago sought by *mandamus* to compel compliance with an act fixing minimum salaries of such officers and directing payment thereof by the city. To the argument that the act contravened sections 9 and 10 of article 9 of the constitution, it was held that the General Assembly may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State, though such performance will create a debt to be paid by local taxation. It was held, also, that the language "for corporate purposes," used in section 10 of article 9 of the constitution, does not include functions which a municipal corporation performs in its governmental capacity as an agency of the State, and that, as to them, the General Assembly may impose burdens, though they result in taxes upon the municipal corporation.

The argument of counsel that the holding of the court was there based on the conceded power of the legislature to establish courts, is not apt. While probation officers in

that case were appointed by the municipal court, and so may be said to be a part of the judicial structure, the ground upon which the city may be made to pay their salaries is not that they form a part of the judicial structure of State government but that the functions which they, as officers, discharge are governmental, and, regardless of who appointed them or the title they bear, the duties discharged by them affect the general welfare or the safety of the State. It is, it seems to me, illogical to say that because the constitution is a mandate to, or confers plenary powers upon, the General Assembly to establish a judicial system for the State, that body may levy a tax against a municipality for a corporate purpose, though a tax for such purpose is prohibited by other provisions of the constitution. Such a view would render inconsistent and repugnant to one another the applicable provisions of the constitution. As I view it, the basis and reason of the decision in *People* v. *City of Chicago* is, and was necessarily, that the fixing of minimum salaries for probation officers is not a corporate purpose of the city. That decision is not, and, as I view it cannot be, based upon the fact that such officers are a part of the judicial system of the State. While that fact may be said to constitute proof of lack of corporate purpose, yet it is the existence of the thing proved that affords constitutional basis for such an act. It seems a distinction without a difference to say that the reason for the rule is based upon the fact that probation officers are a part of the court system, while firemen are not. Janitors of the court building, appointed by the court and paid by the city, could, by such reasoning, be brought within a minimum wage act imposed by the General Assembly, because they are a part of the court system, though it could scarcely be said that they carry on governmental functions.

As the maintenance of fire departments and the services of firemen belong to the governmental rather than the corporate functions of cities and are governmental functions

which the cities discharge as agencies of the State, it seems clear that an act regulating their salaries, though it creates a debt against the city, cannot be said to result in the levy of a tax by the legislature against the city for corporate purposes. Such is the extent of the limitations of sections 9 and 10 of article 9 of our constitution. I am, therefore, of the opinion, for the reasons hereinabove expressed, this court is without power to declare this act unconstitutional. Appellants' remedy lies with the General Assembly.

Mr. JUSTICE WILSON, dissenting:

It is settled that the creation of a debt which must be discharged by the imposition or levy of a tax is essentially the same as the direct imposition of a tax. (*People* v. *Block,* 276 Ill. 286; *Morgan* v. *Schusselle,* 228 id. 106; *People* v. *Mayor,* 51 id. 17.) I can not concur in the conclusion of the majority of the court that the indebtedness which the legislature has imposed upon cities for the payment of minimum salaries to firemen, without the consent of the corporate officers or the inhabitants of the municipalities, is not a debt for a corporate purpose. In my judgment the Firemen's Minimum Wage act is within the constitutional inhibition of section 10 of article 9 of the constitution, prohibiting the General Assembly from imposing taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes.

The framers of the constitution of 1870 deemed it wise to place restrictions on the taxing power of the legislature. To safeguard municipal corporations and, especially, the inhabitants of cities, towns and villages, the power to impose taxes for corporate purposes was denied not only to the legislature but to all persons other than the corporate authorities of the municipalities. One of the manifest objects of section 10 of article 9 is thus to prevent the financial destruction of cities, towns and villages by unrestrained imposition of taxes on them without the consent of the

people of these municipalities, or their corporate authorities. Section 10 does not preclude the General Assembly from imposing any tax upon the inhabitants of a municipal corporation, but the prohibition is directed against the imposition of taxes for corporate purposes. The plan of the common law, particularly in its adaptation by this country, was to leave to the political subdivisions of the States the right to control and regulate their own affairs. This has always been most effective inasmuch as such subdivisions are in close touch with the needs and requirements of their citizenry as well as their own financial ability to provide for them. Conceding that today there are few activities of municipal government in which the State does not have an incidental or casual interest, an object of local government does not lose its dominant characteristic merely because the general public has some interest, remote or otherwise, in a particular activity. Here, the interest of the public at large, namely, the people of the State, is merely incidental and subordinate to the interest of the inhabitants of Springfield and other municipalities in the operation and maintenance of their fire departments. Since the municipal action primarily affects a locality rather than the State, such action is essentially local or municipal and a tax therefor is, necessarily, a tax for a corporate purpose.

The conclusion that the Firemen's Minimum Wage act does not contravene section 10 of article 9 of the constitution reduces immeasurably the protection hitherto afforded to municipalities by this salutary provision. There is no reason in logic or law for limiting the salaries of firemen to the classifications made by the act. Provisions for minimum salaries may as well be extended to villages and hamlets. Upon the authority of the decision in the present case, they may be compelled to employ firemen, pay them such salaries as the legislature desires and abolish their voluntary fire departments which, in some portions of the State, have long served a useful purpose. Hereafter, the purely local

affairs of such communities can be subject to remote control. Is there anything that is not a public function within the contemplation of the decision rendered? So long as it can be said that the State is interested, whether primarily or remotely, its interference with local corporate affairs can be sustained. There is, therefore, no pure legal corporate functions of a city because all its functions can be controlled by the State if the legislature cares so to do. The right of home rule by cities is wholly obliterated. The deed of a city council is no longer apparent. The right of the citizens of a city to have its officers fix its budget within its income disappears and becomes a mockery. The obligations of the city become fixed by State legislation, and, in times of depressions such as we have so recently experienced, there can be no effective retrenchment by municipal corporations. No more justification for the State fixing minimum salaries of firemen exists than obtains for like legislation fixing minimum salaries for garbage collectors, street cleaners and plumbing inspectors of toilets. Certainly, efficiency on the part of those municipal employees bears as reasonable a relation to the protection of the public health as does the payment of minimum salaries to firemen to the promotion of the general welfare.

The corporate purposes of a particular municipal corporation must be determined largely by the nature of the corporation itself. Article 5 of the Cities and Villages act (Ill. Rev. Stat. 1937, p. 347) places control of the finances and property of cities and villages in councils in cities and the presidents and boards of trustees in villages. Sub-section 64 (par. 65.63) empowers them, "To erect engine houses, and provide fire engines, hose carts, hooks and ladders, and other implements for prevention and extinguishment of fires, and provide for the use and management of the same by voluntary fire companies or otherwise." One of the corporate objects of the city of Springfield, it necessarily follows, is the maintenance of a fire department for

which the city may levy and collect taxes. An object of municipal action within the governmental powers of a city is clearly a corporate purpose within the contemplation of the constitution. Obviously, the fire department of Springfield is one of its own agencies, maintained for the benefit of the residents of the local community. Its operation and maintenance constitute the exercise of a municipal governmental function, a purpose germane to the objects of the city's creation and which has a legitimate connection with those objects and a manifest relation thereto.

This court in the case of *People* v. *Kapp*, 355 Ill. 596, in its opinion says: "As a resolution does not connote permanency, we cannot escape the conclusion that the fixing of salaries of the employees in the Springfield fire department was an executive or administrative act and not legislative in character. It was therefore not a proper subject for regulation by the electorate, as it is quite generally held in this country that the power to initiate legislation under statutes providing for the initiative and referendum in the conduct of municipal affairs does not extend to such functions of city government as are purely administrative in character." [Citing cases.]

The majority opinion accepts the argument advanced by appellees that since the operation and maintenance of a city fire department is a governmental function the legislature may compel a municipal corporation to perform any duty, when acting in its governmental capacity, although its performance creates a debt to be satisfied by municipal taxation. Four of the six cases cited, (*People* v. *Board of County Comrs.* 355 Ill. 244; *St. Hedwig's Industrial School* v. *County of Cook*, 289 id. 432; *People* v. *County of Williamson*, 286 id. 44, and *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake*, 287 id. 337;) were actions against counties. The limitation on legislative imposition of taxes upon municipal corporations for corporate purposes does not, however, extend to counties, townships and school districts. (*Bolles* v. *Prince*, 250 Ill. 36; *Raymond* v. *Hart-*

*ford Fire Ins. Co.* 196 id. 329; *Wetherell* v. *Devine,* 116 id. 631; *Braun* v. *City of Chicago,* 110 id. 186.) Although the statement of the principle relied upon by appellees in the foregoing cases in no way impairs the correctness of the judgments rendered, the *dicta* were unnecessary to the decisions, as sections 9 and 10 of article 9 are not applicable to counties. In *People* v. *City of Chicago,* 351 Ill. 396, the contention was made that section 14 of the Probation act, to the extent it fixed minimum salaries of probation officers for the payment of which the city council was required to . make appropriations, was in conflict with sections 9 and 10 of article 9. Obviously, the establishment or maintenance of a judicial system, and, in particular, a probation system, has no relation to the corporate affairs of a municipality. On the contrary, article 6 of our constitution confers upon the legislature plenary power to establish and provide for a judiciary and a system of justice. *People* v. *City of Chicago, supra,* it is submitted, is not decisive.

*City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372, cannot avail the appellees. It held that "An act to indemnify the owners of property for damages occasioned by mobs and riots," in force July 1, 1887, did not create a debt against the city of Chicago without its consent, within the meaning of section 10 of article 9. The court, as early as *People* v. *Mayor, supra,* construing section 5 of article 9 of the constitution of 1848, had pointed out that extraordinary situations might exist where the General Assembly, without the consent of the corporate authorities, could impose taxes, local in their character, if required by the general good government of the State, because such taxes would not be merely for corporate purposes, "as if one of the cities of the State should be insurgent, requiring the interposition of the military power, it will not be denied the State, on quelling the insurrection, could impose taxes upon the city to defray the expenses of a resort to military power. So, if the police department of a city should fail to furnish reasonable security to life and property, the State, undoubt-

edly, might provide such force, and assess the city for the expense." The "Mob law" of 1887 fell within the exception described and was held to be a mere police regulation for the better government of the State. Conversely, where a city is performing its delegated duty in the first instance, and the State itself is not involved, the legislature lacks authority to create a debt or impose a direct municipal tax for a corporate purpose. (*Wider* v. *City of East St. Louis*, 55 Ill. 133; *Lovingston* v. *Wider*, 53 id. 302; *People* v. *Mayor, supra.*) In the present case the record fails to disclose that prevailing rates of compensation to firemen are inadequate to properly man the fire department of any city to which the Firemen's Minimum Wage act applies.

To sustain the validity of the challenged statute, the majority opinion places reliance upon the familiar rule that the operation and maintenance of the fire department by a municipal corporation is an exercise of a governmental function so as to relieve it, at least in the absence of statutory provision to the contrary, from liability for injuries to person or property resulting from the malfeasance or nonfeasance of the departmental officers or employees. (*Roumbos* v. *City of Chicago*, 332 Ill. 70; *Wilcox* v. *City of Chicago*, 107 id. 334.) A distinction obtains in this class of cases involving tort liability of a municipality between "governmental" or "public" functions, on the one hand, and "private" or "proprietary," on the other. The obvious reason for adherence to the distinction, in tort cases, between acts done in a governmental as distinguished from a proprietary capacity, or a public, in contradistinction to a private or corporate capacity, is the public danger of imposing upon a municipality liability which might prove so onerous as to destroy the municipality itself. In *Wilcox* v. *City of Chicago, supra,* the court discussed alternative theories to support its conclusion that the city of Chicago was not liable for the negligence of its firemen in putting out fires, one, that in furnishing fire protection the municipality acted in

its governmental capacity, and, second, that it was contrary to public policy to make municipalities liable in actions of this character since so to do would, in substance, cause them to act as insurers against fire hazards.

Even if it be conceded that the operation and maintenance of a city fire department is a governmental and not a private or proprietary function, it does not follow that the function is a State, as opposed to a municipal, governmental function. The classification of municipal activities or functions as proprietary or private, on the one hand, and governmental on the other, is of little importance where the issue is whether the debt created against a city is an indebtedness for a State governmental purpose or for a municipal or city governmental purpose. The constitutional inhibition of section 10 of article 9 is directed against taxation imposed by the State, or persons other than corporate authorities, for corporate purposes, and does not purport to refer to private or proprietary purposes as distinguished from governmental purposes. Taxes, whether imposed by the legislature or local taxing authorities, must be for a public or governmental purpose (*Robbins* v. *Kadyk*, 312 Ill. 290) and, when collected, devoted to the cost of administering governmental functions. The test in determining whether a purpose is a corporate purpose within the purview of section 10, hence, cannot be whether it is governmental or private, since the constitutional limitation applies solely where the subject matter is one involving taxation, and taxes can be levied only for those corporate purposes which are public or governmental in so far as the State is concerned.

For the reasons stated I am constrained to dissent from the majority opinion. The judgment of the circuit court, in my opinion, should be reversed.

Mr. CHIEF JUSTICE SHAW concurs in this dissenting opinion.