Leo George et al., Appellants, v. City of Danville, Appellee.

Gen. No. 9,336..

Heard in this court at the February term, 1942. Opinion filed May 20, 1942.

LONDRIGAN & LONDRIGAN, of Springfield, and PEN-WELL, BURK, TWOMEY & JOHNSON, of Danville, for appellants.

RALPH ROUSE, Corporation Counsel, and ACTON, ACTON, BALDWIN & BOOKWALTER, of Danville, for appellee.

MR. PRESIDING JUSTICE HAYES delivered the opinion of the court.

Plaintiffs forty-two members of the Fire Department of the City of Danville, brought an action against that city in the circuit court of Vermilion county to recover the difference between the salary paid them from July 13, 1937 to January 1, 1941, and the amount due them had they been paid one hundred and seventy-five dollars per month during that period as provided by ch. 24, art. 12, secs. 12–1, 12–2, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 21.1360, 21.1361]. This statute, originally enacted in 1937 and effective on July 13 of that year, provides in part that, ". . . The salary to be paid to a fireman in any municipality with 25,000 or more inhabitants but with less than 150,000 inhabitants shall be not less than one hundred and seventy five ($175.00) dollars per month . . . ." It is conceded by all parties to this cause that the City of Danville has the requisite population and comes within the terms of the statute.

On July 14, 1937, a meeting of the city firemen was called at the request of the corporation counsel of the City of Danville. At this meeting the corporation counsel explained the terms of the statute quoted above and requested the firemen to sign an agreement wherein they consented to accept for the ensuing fiscal year, salaries less than the statutory minimum. Plaintiffs were told at this meeting that unless they executed the proposed agreement it would be necessary to discharge twenty-five members of the department

in order to meet the requirements of the statute from city funds available for that purpose. Plaintiffs signed the agreement and signed similar ones in 1938 and 1939. No agreement was executed in 1940.

The circuit court of Vermilion county, who heard the case without a jury dismissed those portions of the complaint which sought recovery for amounts claimed by plaintiffs prior to May 1940, but entered judgment for each of the plaintiffs in the respective amounts claimed subsequent to that date.

The paramount issue in this case is whether plaintiffs, by contract, could waive the provisions of the statute quoted above. While it is true that the language of the statute is unequivocal and permits no departure from its requirements on the part of municipalities coming within its terms, it has long been recognized in this State that ordinarily the benefits of legislation may be voluntarily surrendered by those upon whom they have been conferred. *Steen v. Modern Woodmen of America,* 296 Ill. 104; *Zeigler v. Illinois Trust & Savings Bank,* 245 Ill. 180. It is only where such surrender would thwart the public policy of the State and endanger the welfare of its citizens that this freedom of contract is proscribed.

The statute before us contains no express declaration of policy by the general assembly, but we believe that by its very enactment the legislature determined that the general welfare of the public demanded that minimum wages for firemen be established and that it should be the public policy of this State that their compensation should not be reduced below the standards therein set up. It cannot be controverted that it is the public policy of this State that adequate fire protection should be provided by every municipality and it must be assumed that the general assembly determined that such protection could be provided only if firemen were assured of compensation commensurate with the hazards inherent in their work so that

capable men would be attracted to the job. That this determination was reasonable has already been decided. ·

In *People v. City of Springfield*, 370 Ill. 541, the Supreme Court stated: ". . . fire protection is a thing not only of local concern but in which the general public has a vital interest. The owners of property and the general public are not the only ones affected by legislation for fire protection. There is a vast army of men employed in that occupation, which is obviously fraught with hazards uncommon to many other callings. . . . In the interest of the public, as well as themselves, firemen are entitled to receive adequate compensation for their services, commensurate with such hazards. Otherwise, few men would seek that avenue for a livelihood. The protection of life and property from fire conserves the resources of the country, and is, therefore, a matter of public welfare. . . . It is to the interest of the State that its citizenry be adequately housed and fed. Such a policy tends to prevent indigency, with its corresponding burdens on the public, and to maintain the strength and health of the citizens."

It, therefore, seems clear that plaintiffs could not waive the provisions of the statute in question here because by so doing they would jeopardize the public good.

It is the city's contention however, that because the several agreements executed by plaintiffs have been fully performed that no harm has been done either to the firemen or the public at large, and that public policy has not been thwarted. This argument overlooks the fact that by giving effect to contracts of this sort the mandate of the general assembly can be evaded. At the time this statute became effective, the finances of the City of Danville were in such shape that it would have been difficult to meet the additional burden imposed. This no doubt was true of many cities af-

fected by the act. The general assembly undoubtedly realized this, but felt the public need for adequate fire protection more compelling. Means existed whereby the defendant city could have raised additional revenue to meet the increase in salaries, and authority to levy some additional taxes was obtained by referendum in 1938. This step was taken however, with full knowledge that the authority obtained would not provide funds sufficient to meet the requirements of the statute. No attempt was made by the city to secure by referendum the benefits of the Fire Protection Tax Act, pursuant to which increased taxes could have been levied to provide the necessary funds to fully meet its obligations, nor is there proof of any serious effort on the part of the city officials to reduce other less essential municipal expenses. Instead they secured the execution of an agreement which voided the effect of the statute and repeated this procedure each year until 1940, when they decided that salaries less than statutory minimum could be paid without the benefit of any agreement. At no time did the city evidence any intent of complying with the statute. Under these circumstances, to give any effect to these agreements, even though executed, would be to stamp with approval the obviously illegal action of the city. In our opinion these agreements were wholly void. *Pitsch v. Continental & Commercial Nat. Bank*, 305 Ill. 265.

Defendant also contends that plaintiffs' claims are barred by the doctrine of promissory estoppel. No such estoppel could operate here however, because the promises upon which it must be predicated were contrary to public policy and void. *DeKam v. City of Streator*, 316 Ill. 123. Nor are plaintiffs guilty of laches. This legislation was subject to attack in the courts and by an attempt to repeal in the general assembly until October 11, 1940, when *People ex rel. Gramlich v. City of Peoria*, 374 Ill. 313 was decided by the Supreme Court. The present action was com-

menced shortly thereafter and we believe that plaintiffs acted with reasonable diligence to protect their rights.

For the reasons stated the judgment of the circuit court of Vermilion county is reversed and the cause remanded to that court with directions to enter judgment for the respective plaintiffs in the amounts proved to be due them.

*Reversed and remanded with directions.*