(No. 11783.—Judgment affirmed.)

THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF COMMISSIONERS OF LINCOLN PARK, Appellees, *vs.* THE COMMISSIONERS OF LINCOLN PARK, Appellants.

*Opinion filed February 20, 1918.*

1. CONSTITUTIONAL LAW—*act of 1917, providing for park police pension fund, is not invalid as special legislation.* The act of 1917, (Laws of 1917, p. 612,) providing for a park police pension fund, is not special legislation which is prohibited by the constitution, as it applies to all boards of park commissioners who have established a police force.

2. SAME—*whether general law can be made applicable is question for the legislature.* Whether a general law can be made applicable in cases other than those enumerated in section 22 of article 4 of the constitution as to which special legislation is prohibited is a question for the legislature and not the courts to determine.

3. SAME—*preservation of good order is primarily a public and governmental function.* The maintenance or preservation of good order is primarily a public and governmental function, and is delegated by a State to a smaller embraced municipality only that it may be more effectively exercised.

4. SAME—*legislature may require municipality to levy tax to create park police pension fund.* The police officers of a municipality perform public or governmental duties even though acting

within prescribed municipal territorial limits, such as park police, and the legislature may require a municipality to levy a tax to pay such officers' salaries or to create a pension fund for such officers or their dependents without violating sections 9 and 10 of article 9 of the constitution, concerning taxes for corporate purposes.

APPEAL from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

ROBERT R. BALDWIN, for appellants.

HENRY P. CHANDLER, (TOLMAN, REDFIELD & SEXTON, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook county ordering a writ of *mandamus* to issue to compel appellants, the Commissioners of Lincoln Park, to levy a tax upon the territory within their control for a park police pension fund for the year from July 1, 1917, to June 30, 1918. The suit was instituted by appellees, the Board of Trustees of the Police Pension Fund of the Commissioners of Lincoln Park, and an agreed case was submitted to the court to have determined the validity and constitutionality of an act of the General Assembly passed and in force July 1, 1917, entitled "An act to provide for the setting apart, formation, administration and disbursement of a park police pension fund." (Laws of 1917, p. 612.) Upon the validity of such act it is agreed depends appellees' right to the writ of *mandamus*.

The statement of the agreed case names the parties and recites their duties and status as trustees and commissioners; the area of Lincoln Park and nearby parks within the Lincoln Park district; the miles of boulevards under control of the commissioners; that such commissioners employ a police force to enforce their ordinances and the laws of Illinois; that these officers make arrests, which consist of about five offenders against the State laws to three against

the park ordinances. The agreed case states the duties of the police pension fund trustees and the method provided by law for levying taxes in the Lincoln Park district; that such trustees had requested the park commissioners to levy a tax to meet the requirements of the pension fund, which request at a meeting of the park commissioners was denied because of a doubt as to the constitutionality of the legislation upon which the request was based, the title of which act we have before set out. The object of the petition was to require the levy of a tax of one-seventeenth of a mill on the dollar upon the taxable property within said Lincoln Park district for said park police pension fund for the year from July 1, 1917, to June 30, 1918.

The act involved, passed by the last General Assembly, consists of eleven sections. Section 1 provides that when a board of park commissioners shall have established a police force, "there shall be created, maintained and disbursed in the manner prescribed in this act a pension fund for such policemen." Section 2 provides for the selection of trustees to care for and disburse such pension fund. Sections 3, 4, 5 and 6 provide the terms of eligibility to a pension and the amount, and provide as to cessation of payment. Section 7 provides for meetings of said board of trustees of the police pension fund, its organization, issuance of certificates to beneficiaries, and that records and reports be made to the park commissioners. Section 8 provides:

"Sec. 8. Said pension fund shall consist of amounts of two and one-half per cent retained or deducted from the salary or wages payable to each member of such police department each month, and such other sums as are hereinafter referred to.

"It shall be the duty of the superintendent of insurance of the State of Illinois to determine the amount of money necessary to be provided annually for the purpose of:

"(*a*) Paying pensions granted under the act superseded by this act.

"(*b*) Paying pensions to policemen (their widows and children entitled thereto) members of the department of police prior to January 1, 1916; and

"(*c*) Establishing and maintaining a reserve fund for the payment of pensions to policemen (their widows and children) becoming members of the police department subsequent to January 1, 1916.

"Such superintendent of insurance shall report his findings to the board on or before the second day of July of each year. Said board shall certify to the board of park commissioners respectively on or before the 10th day of July annually, beginning July, 1917:

"First. The assets in their custody at such time.

"Second. The estimated receipts during the next succeeding year (from July 1 to June 30) from deductions from the salary of policemen as herein above provided and from all other sources.

"Third. The estimated amount required during said period for:

"(*a*) Paying pensions granted under the act superseded by this act.

"(*b*) Paying pensions to policemen (their widows and children entitled thereto) members of the department of police prior to January 1, 1916; and

"(*c*) Establishing and maintaining a reserve fund for the payment of pensions to policemen (their widows and children) becoming members of the police department subsequent to January 1, 1916. * * *

"Each of said boards of park commissioners shall annually levy a tax (in addition to the taxes now authorized by law) upon all taxable property embraced in the district governed by them respectively at the rate on the dollar of all such taxable property which, when added to the deductions from the salary or wages of policemen and receipts available from all other sources, as herein above referred to, will amount to a sufficient sum to meet the annual re-

quirements above referred to and designated as $(a)$, $(b)$ and $(c)$. Said taxes shall be levied and collected with and in like manner as the general taxes of such parks. * * * The amount of such annual tax to be levied by the South Park Commissioners shall not exceed 1-25th of a mill on the dollar upon all taxable property embraced within such park district; the amount of such annual tax to be levied by the West Chicago Park Commissioners shall not exceed 1-10th of a mill on the dollar upon all taxable property embraced within such park district; and the amount of such annual tax to be levied by the Lincoln Park Commissioners shall not exceed 1-17th of a mill on the dollar upon all taxable property embraced within such park district.

"The county clerk of the county where such park districts are located, or such officer or officers as are authorized by law to spread or assess taxes for park purposes, or other purposes, shall, on receiving certificates from such boards of park commissioners that the amount mentioned in such certificates is necessary for the purpose of paying the liabilities incurred by the operation of this act, spread and assess such amount upon the taxable property embraced in each such park district, the same as other park taxes are by law spread and assessed. * * *

"Should any such board of park commissioners be without authority to levy taxes, then the corporate authorities of any such town (meaning the town supervisor, clerk or assessor thereof) shall perform the duties herein above devolved upon the board of park commissioners."

Section 9 gives the pension board exclusive control and management of the fund mentioned in section 8, with power to draw such pension fund from the treasurer or other officials of such board of park commissioners and to invest it wholly or in part in the name of the board of trustees of the police pension fund in certain designated securities and to provide for the payment of expenses. Section 10 provides for the interchange of information between the park

commissioners and the trustees of the pension fund. Section 11 brings the beneficiaries of the prior act of 1913 within the benefits of the new act and makes the property of the trustees under the former act the property of the new board of the present act, and provides exemptions in favor of pensioners.

While an entire act should be read in construing any part of it, what we have set out of the different sections of the act here under consideration is sufficient for a consideration and understanding of the questions here involved.

Appellants contend that the act is a direct legislative imposition on designated municipal corporations; that it is an arbitrary classification of such corporations for purposes of taxation, constituting special legislation, in violation of section 22 of article 4 of the constitution; and also that it amounts to the imposition of a tax by the legislature upon the park districts for local purposes without the consent of the corporate authorities, in violation of sections 9 and 10 of article 9 of the constitution.

Section 22 of article 4 of the constitution provides the General Assembly shall not pass local or special laws in certain enumerated cases, or in such other cases when a general law can be made applicable. The act here involved, which, in brief, provides for a pension system for members of the police force maintained by boards of park commissioners, does not deal with or come under any of the classes of cases enumerated in said section. The subject matter of the act under consideration is the police of boards of park commissioners, and the legislative intent was obviously to promote the efficiency and secure the welfare of such police officers or their dependents. In *Commissioners of Lincoln Park* v. *Fahrney,* 250 Ill. 256, this court held that special legislation concerning parks was not prohibited by the constitution; that the constitution only prohibited the passage of local or special laws upon the subjects enumerated in section 22 of article 4, and in such other cases where a general law can

282 — 23

be made applicable. The act by its terms applies to all boards of park commissioners who have established a police force, and while it, in establishing a different maximum rate of tax in Lincoln Park, South Park and West Park districts, might be said to be special legislation, it is not, as before stated, special legislation which is prohibited by the constitution. Whether a general law can be made applicable in any case other than those enumerated in section 22 of article 4 is for the legislature and not the courts to determine. *Owners of Lands* v. *People,* 113 Ill. 296; *Sanitary District* v. *Ray,* 199 id. 63; *People* v. *McBride,* 234 id. 146; *People* v. *LaSalle Street Trust and Savings Bank,* 269 id. 518.

We next come to the second contention of appellants against the validity of the act involved. It is not disputed that sections 9 and 10 of article 9 of the constitution forbid the legislature from imposing taxes upon a municipality for local or corporate purposes without the consent of the corporate authorities. It has been so held in *People* v. *Mayor,* 51 Ill. 17, *Town of Fox* v. *Town of Kendall,* 97 id. 72, *City of Chicago* v. *Manhattan Cement Co.* 178 id. 372, and *North Fork Special Drainage District* v. *Rector Drainage District,* 266 id. 536. The question then remains, is the tax authorized by this act to make up, in part, the police pension fund, for a local or corporate use or is it for a public or governmental use?

The agreed case recites the police officers, being the beneficiaries of the act, made arrests for violations of the laws of the State as well as for violations of ordinances of the park district, and that a major portion of the arrests made in 1916 were for violations of the former. The pension fund for the police officers is raised, in part, by a monthly deduction from such officers' salaries and in part by a tax levied in such park districts. It is the duty of the State superintendent of insurance to determine and certify the amount required to be raised each year by taxation to the board of trustees of such police pension fund. It then be-

comes the duty of such trustees to report the sum to be raised by taxation to the park commissioners, upon whom the duty then devolves to levy a tax upon the property embraced to raise such sum. It thus appears that the authority for having the tax levied is in the State, and that both the trustees of said pension fund and the park commissioners are but ministerial agents, whose duties are, respectively, to determine and extend the amount needed as a tax. Is the service of police officers local and corporate or public and governmental? If the latter, the legislature may require the levy of taxes without the consent of the local authorities. In *Town of Fox* v. *Town of Kendall, supra,* it was held the legislature could compel a municipality to levy taxes for the support of paupers. In *Board of Supervisors* v. *People,* 110 Ill. 511, it was held the legislature could compel a tax levy for the construction of a bridge across a river as a part of a highway.

The maintenance or preservation of good order is primarily a public and governmental function. It is the purpose of all organized government, and is delegated by a State to a smaller embraced municipality only that it may be more effectively exercised. No organized municipality could exist and exercise its functions without being subservient to the police of the State of its creation. Judge Cooley, in his work on Taxation, (3d ed. vol. 2, p. 1296,) says: "But if the local authorities were allowed unlimited discretion to levy or refuse to levy the necessary taxes for the support of the local police force, it might possibly happen that from neglect or refusal to do so one part of the State might be left a prey to disorder and violence, to the general detriment of the State at large. Of course, no State could safely for a single day tolerate such a condition of affairs. A city or township could no more be left at liberty to decline taxation for police purposes when the police laws and police force, and the tax which supports them, are made local by the law than if all were general. The police or-

ganization of the State is really general, however it may vary in different localities, and the obligation to support it is general, however it may be apportioned. To this effect are the decisions, and within the reason of these decisions would fall all cases in which the municipal corporations or subdivisions of the State are called upon to tax their people for the erection and repair of court houses and jails, by means of which the police laws are rendered effectual. Such calls must, of course, be responded to. The power that prescribes police regulations and varies them to meet the needs of different localities has undoubted authority to apportion the moneys raised for general purposes on its own view of the local needs. The legislature may therefore require a county to appropriate a part of its revenue to the special needs of the police board of a city within its limits, and an act for that purpose is liable to no constitutional objection."

In *State* v. *Love,* 89 Neb. 149, (34 L. R. A. [N. S.] 607,) a law was sustained making the payment of pensions to firemen mandatory. It was there insisted that a constitutional provision similar to the one here involved was violated. The court in its opinion said: "On the other hand, in *Gillespie* v. *City of Lincoln,* 35 Neb. 34, in an exhaustive and well reasoned opinion by Judge Post, this court held that firemen should be placed in the same classification as policemen and health officers; that they are public or State officers vested with such powers as the statute confers and that the duties they perform do not relate to the corporate functions of the municipality. This opinion is sustained by the overwhelming weight of authority." (Citing cases.) See, also, *State* v. *Williams,* 68 Conn. 131, and note to case as reported in 48 L. R. A. 465.

In *People* v. *Abbott,* 274 Ill. 380, this court sustained the constitutionality of the Police Pension act of 1909, requiring cities of a given population to apply specified public moneys to a police pension fund. It was there urged, as here, that the act violated section 10 of article 9 of the

constitution, though the same argument does not seem to have been advanced as is here urged. The court there said: "Such pensions generally are not considered donations or gratuities. The rule in a majority of jurisdictions is, that the legislature has power to require municipalities to pension their employees and raise the funds for that purpose." Citing authorities.

The police officers of a municipality perform public or governmental duties even though acting within prescribed municipal territorial limits. This being so, the legislature can require a municipality to levy a tax to pay such officers' salaries or to create a pension fund for such officers or their dependents.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*