(No. 25626.—
WILLIAM J. LITTELL, *et al.* Appellees, *vs.* THE CITY OF PEORIA, Appellant.

*Opinion filed October 11, 1940.*

SHAW and WILSON, JJ., dissenting.

WILLIAM L. EAGLETON, and MICHAEL A. SHORE, for appellant.

JOSEPH F. BARTLEY, and GEORGE W. SPRENGER, (BARTLEY & YOUNGE, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Plaintiffs, 132 in number, instituted an action at law in the circuit court of Peoria county against the city of Peoria to recover the difference between the amounts paid plaintiffs as police officers of the city and the amounts due under the provisions of the Policemen's Minimum Wage act. (Ill. Rev. Stat. 1939, chap. 24, par. 860a, *et seq.*) The respective amounts claimed varied according to length of time served,

but nothing was claimed for any service rendered subsequent to July 21, 1939, the effective date of the 1939 amendment to said law. The trustees of the retirement board of the policemen's annuity and benefit fund of the city were permitted to join as plaintiffs and file a count in which they claimed certain percentages of the amounts plaintiffs recovered.

Defendants filed an answer attacking the constitutionality of the Policemen's Minimum Wage act. On plaintiffs' motion the paragraphs of the answer which raised constitutional questions were stricken. Defendant elected to stand on its answer. By stipulation, the questions raised by the ruling on the motion to strike were expressly preserved for an appellate review but the facts necessary to establish the several claims, if the act should be held constitutional, were stated and judgments were entered in favor of the several plaintiffs for the respective amounts claimed. Constitutional questions being involved the cause was brought direct to this court.

The points raised by striking certain paragraphs of the answer are that the act creates a corporate debt of the city without its consent and therefore contravenes section 10 of article 9 of the constitution; that it is an unreasonable, arbitrary and an excessive exercise of the police power as applied to the city of Peoria; that it is special legislation and contrary to section 22 of article 4 of the constitution, and that it amends several sections of the Cities and Villages act without inserting at length the sections so amended and, therefore, violates section 13 of article 4 of the constitution.

This act is in principle the same as the Firemens' Minimum Wage act, (Ill. Rev. Stat. 1939, chap. 24, par. 860c, *et seq.*) which was before this court in *People* v. *City of Springfield,* 370 Ill. 541. Some of the constitutional objections now made were considered in that case. We adhere to what was said and the conclusions reached in the ma-

jority opinion in that case and will not travel the same ground except in so far as may be necessary to properly consider the questions now presented and which were not considered there.

The municipalities affected by the Policemen's Minimum Wage act are political subdivisions of the State organized for governmental purposes. Their existence is subject to legislative will and they exercise only such powers as are granted either directly or by necessary implication. Powers which they exercise, although of a public nature, are properly divisible into two classes, governmental and private. In an analysis of defendant's contentions that the act imposes a tax without its consent, it is necessary to consider whether police legislation such as this pertains to a governmental function or is a matter of local concern to the municipality.

Under our form of government the duty rests upon the State to preserve peace and order and protect life, liberty and property. This duty extends throughout the State and into every political subdivision thereof. From such duty there flows the power of the State to prescribe, by legislative enactment, the means by which peace and order shall be maintained and the fundamental rights protected. In *Board of Trustees* v. *Comrs. of Lincoln Park,* 282 Ill. 348, it was said: "The maintenance or preservation of good order is primarily a public and governmental function. It is the purpose of all organized government, and is delegated by a State to a smaller embraced municipality only that it may be more effectively exercised. No organized municipality could exist and exercise its functions without being subservient to the police of the State of its creation." The State in the exercise of such power may, for convenience of enforcement, impose a duty upon municipalities to assume a part of this burden of State government, and when a municipality is acting pursuant to such legislative direction it is engaged in a governmental function as an agency of the State government.

348

In construing section 10 of article 9 of the constitution and in interpreting its meaning this court has adopted the rule that the State may impose a duty on a municipal corporation which relates to the general welfare and security of the State and even though the performance of the duty will create a debt to be paid by local taxation, such legislation does not contravene this constitutional provision. (*People* v. *City of Springfield, supra; People* v. *City of Chicago,* 351 Ill. 396; *City of Chicago* v. *Knobel,* 232 id. 112; *Board of Trustees* v. *Comrs. of Lincoln Park, supra.*) In writing of the power of the State to impose a tax upon a municipality for the maintenance of agencies engaged in matters pertaining to the public welfare, Judge Cooley in his work on Taxation, third edition, volume 2, page 1296, says: "But if the local authorities were allowed unlimited discretion to levy or refuse to levy the necessary taxes for the support of the local police force, it might possibly happen that from neglect or refusal to do so one part of the State might be left a prey to disorder and violence, to the general detriment of the State at large. Of course, no State could safely for a single day tolerate such a condition of affairs. A city or township could no more be left at liberty to decline taxation for police purposes when the police laws and police force, and the tax which supports them, are made local by the law, than if all were general. The police organization of the State is really general, however it may vary in different localities, and the obligation to support it is general, however, it may be apportioned. To this effect are the decisions, and within the reason of these decisions would fall all cases in which the municipal corporations or subdivisions of the State are called upon to tax their people for the erection and repair of court houses and jails, by means of which the police laws are rendered effectual. Such calls must, of course, be responded to."

In *Board of Trustees* v. *Comrs. of Lincoln Park, supra,* this court considered the constitutionality of an act author-

izing creation of a park police pension fund and required the municipality to levy taxes to be used in the creation and maintenance of the fund. One of the constitutional objections there interposed was the same as the one under discussion. It was held the police protection of the park area was in the interests of the general welfare, that it was a governmental function and the provision for a tax for such purpose was not subject to constitutional objection. The Police Pension Fund act of 1909 was sustained against a similar attack in *People* v. *Abbott,* 274 Ill. 380.

There is no necessity for reconsideration in this case of the meaning of the phrase "corporate purpose" as used in section 10 of article 9, for what was said in *People* v. *City of Springfield, supra,* is controlling here. The Policemen's Minimum Wage act in question does not contravene section 10 of article 9 of the constitution.

Defendant's contention that the enactment of the Policemen's Minimum Wage law is an unreasonable and excessive use of police power is founded on a factual condition as it affects the city of Peoria. The general theme of parts of the answer stricken was that the minimum wages provided by the act are unreasonably high and out of proportion to wages paid for similar work in other occupations. A comparison was made between the wages provided in the act and those paid by cities of comparable population in other jurisdictions. Facts were alleged showing the cost of living and wages paid for various classes of labor in industrial plants in the city of Peoria, and from these it is argued the wage provision in the act is out of proportion to wages usually paid in private industry for services requiring a similar background of skill and education, and that the passage of the act can not be justified on the grounds it was passed in the interests of the health and living conditions of those employed in police work.

The purpose of the act and the extent to which there has been an exercise of the police power can not be determined

solely from an evaluation of the personal benefits accruing to those engaged in police work in the city of Peoria. It must be determined from the character of service police officers are required to render in behalf of the State in the preservation of peace and order. As heretofore pointed out, police protection is a matter of general concern to the whole State. Failure to detect and check crime in the more populous centers might leave the remainder of the State a prey to disorder and violence. The legislature could well conclude that the risk attendant upon the duties of a police officer, the hours that he is subject to call and the general character of service he is required to render, demanded special consideration and that a higher wage would result in securing greater efficiency in the service and more securely protect the peace and order of the whole State.

The legislature determines when an exigency exists for the exercise of police power but it is for the courts to determine the subjects of such power and what are reasonable regulations thereunder. (*City of Belleville* v. *St. Clair County Turnpike Co.* 234 Ill. 428; *People* v. *Steele,* 231 id. 340; *Booth* v. *People,* 186 id. 43.) The provision for a minimum wage to be paid policemen in the cities included within the classifications specified in the statute is a proper subject for the exercise of the police power and the legislature having determined an exigency exists for such regulation of wages the courts can not say that it is an abuse of power. The paragraphs of the answer alleging such facts did not constitute a defense and were properly stricken.

Defendant's contention that the act is special legislation and violates section 22 of article 4 of the constitution is answered in *People* v. *City of Springfield, supra.*

Defendant urges that the act amends certain sections of the Cities and Villages act and that since the sections amended are not set forth in the act, section 13 of article 4 of the constitution has been violated. Counsel for the defendant does not argue this question but merely refers to

the argument made in the pending case of *People* v. *City of Peoria, ante,* p. 313. Such presentation of a question does not comply with the rules of this court and no consideration will be given to that point in this case.

Defendant's final contention is that plaintiffs improperly joined all their causes of action in one count and insists that the provisions of the Civil Practice act required the statement of each plaintiff's cause of action in a separate count. A stipulation was filed which fixed the amount due each plaintiff and it was agreed that if the trial court held the Policemen's Minimum Wage act constitutional, judgments should be entered for such amounts. By express reservation, the constitutional questions here considered were reserved for appellate review, but in view of the stipulation the defendant can not raise any question in reference to the pleadings on this appeal.

The several judgments of the circuit court were correct, and are affirmed. *Judgments affirmed.*

SHAW and WILSON, JJ., dissenting.