(No. 35224.—

WILLIAM H. RUTH, Appellee, *vs.* THE AURORA SANITARY DISTRICT, Appellant.

*Opinion filed May 22, 1959.*

12

ROBERT E. DOLPH, of Aurora, for appellant.

STURMAN AND BLOCH, of Chicago, (ALLAN R. BLOCH, and MARTIN L. SILVERMAN, of counsel,) for appellee.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, Assistant Attorney General, of counsel,) for *amicus curiae,* The Sanitary Water Board.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant appeals from a decree of the circuit court of Kane County ordering the trustees of the Aurora Sanitary District to abate an existing nuisance caused by the discharge of untreated or inadequately treated sewage into the Fox River. The appeal is directed to this court because of defendant's attack on the constitutionality of a statute.

The Aurora Sanitary District, organized about 1927 under the Sanitary District Act of 1917 (Ill. Rev. Stat. 1957, chap. 42, par. 299 *et seq.*), originally consisted of an area of 10 square miles with a population of approximately 40,000, including mainly the residents of the city of Aurora. A disposal plant of the primary and secondary settling tank type, and a collection system designed for the combined collection of surface water and sewage waste, were installed in 1928 capable of serving a population equivalent of 50,000. With the exception of a large interceptor line which was installed to serve the southeast quadrant of the District, the sewer system and disposal plant remain as originally installed in 1928. The system and plant were financed by a Federal grant in aid and the issu-

ance of bonds. All bonds were retired by 1948, leaving the District free of any bonded indebtedness.

The District was expanded by annexations to include the villages of Montgomery and North Aurora, and was thereby increased to 34 square miles with a population approaching 75,000. By virtue of the growth of population, the age of the system, the infiltration of foreign water commingled with the effluent from septic tanks through the leaky joints into the collection system, the carrying of surface waters in the same lines with sewage wastes and like factors, there was an increased flow of sewage wastes and water through the collection system and disposal plant far beyond their capacity. The system has two by-passes around the disposal plant. The excess waste and water, at times amounting to millions of gallons per day, are discharged directly into the Fox River at two separate overflow points resulting in the pollution of the water of the stream. The foregoing facts are not controverted.

Notwithstanding the limited capacity of the system and the increased demands thereon, the Sanitary District has not added to nor improved the system to accommodate the demands of the increased population. However, recognizing the need for expansion and renovation, the board of trustees caused a referendum election to be conducted in December, 1957, on the question of issuing bonds to defray the expense of improving the sewage disposal facilities, but the proposal was defeated.

Numerous residential dwellings are not permitted to connect onto the sewer system and are compelled to make use of septic tanks for sewage disposal. Plaintiff has invested approximately $500,000 in developing a residential subdivision of 435 acres in the northwest quadrant of the District, consisting of 1,195 residential dwelling sites, one shopping center and three churches. Ninety-five percent of the subdivision does not have access to sanitary sewer lines. Plaintiff estimated that his subdivision would produce ap-

proximately 5,000,000 gallons of sewage waste daily. He made appropriate application for sewer connections for his subdivision but was refused by the board of trustees on the grounds, among others, that the sewer system was already operating beyond its capacity, and that increased sewage waste would violate existing rules of public health. Plaintiff then filed this action in chancery in the circuit court of Kane County. The complaint alleges that the failure of the Sanitary District to provide an adequate sewer system resulted in the pollution of Fox River and constituted an existing nuisance which should be abated. He charges that refusal to furnish him with sanitary sewer facilities denied him due process and equal protection of the laws. The complaint prays for an order requiring the defendant to establish necessary facilities to properly treat the raw sewage of all persons within the district, to abate the alleged nuisance by establishing improvements in the collection system and disposal plant, and requests that the court retain jurisdiction to insure compliance with its orders.

Defendant's answer to the complaint is in the nature of a confession and avoidance, admitting, substantially, the facts related above. It asserts that the District is levying the maximum taxes permitted by statute, and to accomplish the improvements necessary to provide the additional service would require the expenditure of funds far in excess of the District's ability to pay and beyond the statutory limits of taxation. The answer further asserts that the circuit court is not a "court of competent jurisdiction" within the meaning of the second paragraph of section 9 of the Sanitary District Act of 1917, that section 9 as amended now violates section 2 of article II, article III, sections 1, 13 and 22 of article IV, and sections 9 and 10 of article IX of the Illinois constitution.

The evidence established that the cost of improvements and additions to the collection system and disposal plant would be approximately $2,000,000, and that the assessed

valuation of the District was sufficient to service a bond issue for this amount and amortize such issue over a twenty-year period.

The issues presented by this record are legal, since there is no substantial dispute of fact. The court entered a decree in favor of the plaintiff finding that discharge of sewage into the Fox River constituted a nuisance which should be abated. The decree ordered the trustees of the District to forthwith abate the nuisance caused by the discharge of untreated or inadequately treated raw sewage into the Fox River, ordered the trustees to construct the proposed projects necessary to abate this nuisance and to employ competent engineers to plan and draw up specifications to that end. It is from this decree that the defendant has appealed.

Defendant contends that the second paragraph of section 9 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1957, chap. 42, par. 308) violates the judiciary article of our State constitution in that it fails to precisely define the court having jurisdiction to enter the abatement order specified therein, that the circuit court of Kane County did not have jurisdiction of this cause and its order is, therefore, a nullity. Defendant's contention is based on two premises: (a) that the jurisdiction of a court cannot be uncertain and (b) that jurisdiction over pollution is now exclusively in the Sanitary Water Board.

The first paragraph of section 9 remains as originally enacted and empowers a district to borrow money for corporate purposes and to issue bonds therefor, provided the question is submitted to and approved by a referendum election of the voters in the District. The second paragraph of section 9 originally added in 1953, as amended in 1957, reads as follows: "Provided that the corporation may borrow money for corporate purposes, and may issue bonds therefor, without holding an election or referendum upon the question, if the corporation or the board of trustees thereof has been directed by an order issued by a court of

competent jurisdiction or by an administrative agency of the State of Illinois having jurisdiction to issue such order, to abate its discharge of untreated or inadequately treated sewage, and such borrowing is deemed necessary by the board of trustees of the Sanitary District to make possible compliance with such order." Defendant argues that this paragraph is ambiguous and uncertain in that the phrase "court of competent jurisdiction" does not define the court having the power to issue the order and that there is the likelihood that the proceedings under this paragraph could be construed to be a special statutory proceeding which could have been assigned to either the circuit or the county courts.

The legal action contemplated by section 9 leaves no doubt that "a court of competent jurisdiction" referred to the circuit court. The constitution grants jurisdiction of all causes in law and equity to the circuit courts and they cannot be deprived of this power by the legislature. (*Stephens v. Chicago, Burlington and Quincy Railroad Co.* 303 Ill. 49; *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31.) The abatement of a public nuisance at the suit of an individual to whom or to whose property it causes or will cause a special or particular injury was a recognized exercise of jurisdiction at the time of the adoption of our present constitution. (*Green* v. *Oakes,* 17 Ill. 249.) The pollution of a river by the discharge of raw or inadequately treated sewage therein constitutes such a nuisance as may be abated by the order of a circuit court. (*Barrington Hills Club* v. *Village of Barrington,* 357 Ill. 11.) We conclude that the second paragraph of section 9 is not rendered indefinite and uncertain by the use of the phrase "court of competent jurisdiction."

The views expressed above leave little to be said for defendant's contention that jurisdiction over pollution of streams rests exclusively in the Sanitary Water Board by virtue of the 1951 Sanitary Water Board Act. (Ill. Rev.

Stat. 1957, chap. 19, par. 145.1 to 145.18.) It is argued that the act of 1951 may be interpreted to mean that control of pollution rests exclusively with the Sanitary Water Board. Section 1 of such act (Ill. Rev. Stat. 1957, chap. 19, par. 145.1) declares that polluted waters constitute a menace to public health and welfare and that it is the public policy of this State to maintain reasonable standards for the purity of water, to provide that no waste be discharged into any water without first being treated to prevent pollution, to provide for the prevention, abatement and control of new or existing water pollution, and to co-operate with other agencies of the State and Federal government to carry out these objectives. Section 6 sets forth the authority, powers and duties of the Sanitary Water Board. It grants to the board the power, among others, to determine if pollution exists, to adopt reasonable rules with respect to hearings, authorizes the board to conduct public hearings and make findings of fact. It further grants the power to make, alter or modify orders requiring the discontinuance of pollution, to issue or deny permits and to perform such other acts as may be necessary to carry out these duties and responsibilities.

We think it apparent that the act contemplates the ultimate enforcement of the powers granted therein by the judiciary. Subparagraph (c)(3) of section 6 provides that the board is authorized to "institute or cause to be instituted in a court of competent jurisdiction legal proceedings to compel compliance with the provisions of this Act." Thus we find performance of the administrative functions explicitly delegated to the Sanitary Water Board, but leaving the performance of judicial functions to the proper courts of competent jurisdiction. This is borne out by other provisions of the act, such as the requirement that the Attorney General shall enforce the financing provisions of the act by an action of *mandamus,* that the penalty provisions shall be enforced by appropriate actions in the name of the Peo-

ple of the State of Illinois, and that violations may be enjoined by appropriate injunctive actions, all of which require access to the circuit courts of this State. We find nothing to indicate a limitation upon the jurisdiction of the circuit courts and many provisions requiring the exercise of their jurisdiction. Neither is there any provision, express or implied, to indicate an intention to vest exclusive control of water pollution in the Sanitary Water Board or to prohibit circuit courts from exercising their present jurisdiction over such matters. Accordingly, we hold that jurisdiction over pollution of the waters of this State was not delegated exclusively to the Sanitary Water Board.

We upheld the constitutionality of the Sanitary District Act of 1917, (Ill. Rev. Stat. 1957, chap. 42, par. 299 *et seq.*) in *Taylorville Sanitary District* v. *Winslow,* 317 Ill. 25, and *People ex rel. Village of South Chicago Heights* v. *Bergin,* 340 Ill. 20. Defendant contends that by reason of the addition of the second paragraph of section 9 it now violates the separation-of-powers article, and sections 9 and 10 of article IX of the constitution.

Essentially, defendant's constitutional argument is that by the second paragraph of section 9 the courts are made "agents" of the legislature with the power to determine the need for local improvements. This is said to constitute a relinquishment by the legislature to the courts of its prerogative to legislate. It implies that the courts are thereby permitted to impose taxes in a municipality for corporate purposes when the legislature is prohibited from so doing. The first paragraph of section 9 authorizes a sanitary district to borrow money and issue bonds therefor, after approval by a referendum election of the voters in the district. The second paragraph then provides a method of borrowing money without the necessity of a referendum vote on the question. The authority to issue bonds without first having a referendum is not directly questioned by the defendant, except inferentially in connection with its due

process argument, and will be considered in connection with that point.

The authority of the board of trustees granted by the second paragraph of section 9 is conditioned (1) upon an order issued by a court of competent jurisdiction (or by an administrative agency with jurisdiction to issue such order) to abate the discharge of untreated or inadequately treated sewage; and (2) that the borrowing be deemed necessary by the board of trustees. The court is not granted any powers or duties concerning the issuance of bonds. It only has the power to order the abatement of the discharge of untreated or inadequately treated sewage after it determines that such a discharge exists. After the determination is made and ordered abated, and only then, can the board of trustees make the decision whether borrowing to provide funds to carry out the court's order is deemed necessary. The legislature has thus provided the boards of trustees of sanitary districts a ready means of discharging their duty to preserve the public health, comfort and convenience by the issuance of bonds if they deem it necessary in order to comply with the court's order. In our opinion section 9 neither grants to the courts the right to legislate nor to impose a tax. We do not pass upon the right of the Sanitary Water Board or other administrative agency to issue an abatement order since that question is not here presented.

We cannot agree with defendant's further argument that section 9 is, in effect, an imposition of a local tax by the legislature in violation of sections 9 and 10 of article IX of the constitution. The governmental function granted to sanitary districts is the treatment and purification of sewage for the preservation of public health. (*People ex rel. Village of South Chicago Heights* v. *Bergin,* 340 Ill. 20.) The abatement of the discharge of raw sewage or inadequately treated sewage is a direct and proximate obligation of that governmental function. (*Taylorville Sanitary District* v.

*Winslow,* 317 Ill. 25; *Wilson* v. *Board of Trustees of the Sanitary District of Chicago,* 133 Ill. 443.) It is well settled that in the discharge of their governmental functions municipal corporations may be subjected to the performance of duties relating to the public health and general welfare of the State even though such duty may create a debt to be paid by local taxation. (*Littell* v. *City of Peoria,* 374 Ill. 344; *People ex rel. Cannon* v. *City of Chicago,* 351 Ill. 396; *St. Hedwig's Industrial School for Girls* v. *County of Cook,* 289 Ill. 432; *People ex rel. County of Franklin* v. *County of Williamson,* 286 Ill. 44; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337; *Board of Trustees of the Police Pension Fund* v. *Commissioners of Lincoln Park,* 282 Ill. 348; *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372.) The creation of the debt, the issuance of bonds, if necessary, and a consequent tax resulting therefrom are component parts of the duty of the Sanitary District to perform its governmental function and do not, therefore, fall within the purview of the constitutional prohibition that the General Assembly may not impose taxes upon a municipality for local corporate purposes. See *People ex rel. Sanitary Dist. of Chicago* v. *Schlaeger,* 391 Ill. 314.

The defendant states that its final contention of violation of the due process clause is essentially the same as those heretofore advanced on the other constitutional questions. We gather that its argument is based on the concept that while public health must be paid for by all, the taking of property by taxation should only be after submission to or approval of the taxpayers. It suggests, for example, that the District's appropriation ordinance is passed only after notice and opportunity of hearing while the burden of a bond issue may be imposed under section 9 without the safeguard of a referendum. We have recognized that a proposition to issue bonds does not require submission

thereof to the voters where the electorate has a voice in the selection of, or the mode of selection of, the corporate authorities who impose the tax. (*People ex rel. Adamowski* v. *Metropolitan Sanitary Dist.* 14 Ill.2d 271; *Cornell* v. *People ex rel. Walsh,* 107 Ill. 372.) Here, there is the additional protection of a finding and order of abatement before the corporate authorities may borrow money and issue bonds. There is no violation of due process in the procedure provided in section 9 of the Sanitary District Act.

We find that the trial court ruled properly upon the constitutional questions raised herein. The decree finds a nuisance to exist and orders the trustees of the Aurora Sanitary District to forthwith abate the nuisance now caused by the overflow of raw sewage or inadequately treated sewage now being discharged into the Fox River. The statute in question gives the trial court jurisdiction to make such findings and to enter the order of abatement as entered in this case but this is the extent of the powers granted to it. The method of planning, constructing and financing is left to the board of trustees. They may take such action as they deem necessary to comply with the court's order. Therefore, that part of the order of the trial court directing the trustees to retain competent engineers, to construct additional and secondary settling tanks, and to install an additional interceptor line should be eliminated from the decree. The decree of the circuit court of Kane County is, therefore, affirmed in all other respects and the cause is remanded with instruction to enter a decree consistent with this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*