North Shore Sanitary District, Petitioner-Appellant, *v.* Pollution Control Board of the State of Illinois *et al.*, Respondents-Appellees.

(No. 71-113;

Second District—June 7, 1972.

*Rehearing denied July 21, 1972.*

Richard Johnson and Isham, Lincoln & Beale, both of Chicago, and Murray R. Conzelman, of Waukegan, for appellant.

William J. Scott, Attorney General, and David Landgraf, Richard Cosby, Richard Kates, Alexander Polikoff, and Regina E. Ryan, all of Chicago, (Morton Friedman, Assistant Attorney General, of counsel,) for appellees.

PER CURIAM:

This case originally arose before the Pollution Control Board of the State of Illinois, (hereinafter described as "Board") on complaints of various respondents alleging that the Petitioner was polluting the air and waters of Lake Michigan and the Skokie Drainage Ditch. The Petitioner, hereinafter described as the "District", has filed a Petition for Review of the order of the Board, pursuant to the Environmental Protection Act (Ill. Rev. Stat. 1970, ch. 111½, sec. 1040), and the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, sec. 264 *et seq.*). The Board consolidated the complaints of the Respondents and, after lengthy hearings, issued an order dated March 31, 1971, which is brought here for review. This order made the following findings, all of which are either undisputed or clearly disclosed by the record:

"1. That the discharges of the District were polluting the air and waters of Lake Michigan and the Skokie Drainage Ditch in violation of the Environmental Protection Act and the regulations promulgated thereunder.

2. That the District has developed plans of its own to abate the pollution that was found to exist.

3. That the improvements and expansion of treatment facilities deemed necessary under the plans of the District would cost approximately $50,000,000.00.

4. That the District had no general fund or funds on hand to enable it to construct the improvements and additional facilities necessary to abate the pollution found to exist."

Paragraphs One and Two of the order of March 31, 1971, directed the District to cease and desist from polluting the waters of Lake Michigan and the Skokie Drainage Ditch and the air at or near its present waste treatment facilities until construction of the additional treatment facilities had been completed as required by the order.

The record further clearly disclosed that the District had previously issued $35,000,000.00 in bonds in 1968, and that said prior bonds approached 5% of the total value of the taxable property contained within the geographical area comprising the District. By reason of these facts, paragraph three of the order of the Board provided, in part as follows:

"The District is hereby ordered under Section 46 of the Environmental Protection Act to issue general obligation or revenue bonds, after July 1, 1971, in the amounts necessary to complete the proposed expansion of its treatment facilities in accordance with its proposed expansion program, * * *. Under this order the District is hereby authorized to issue such bonds up to the amount of $50 million, * * *."

The validity of the quoted portion of paragraph three is challenged by the District upon the following basis:

"1. That the Board had no statutory authority to order the District to issue bonds without a referendum.

2. That the Board had no statutory authority to order the District to issue bonds in excess of its statutory debt limitations.

3. That the order is unconstitutional in that it permits a State agency to impose a tax on the citizens of the District and it violates the constitutional provision providing for separation of powers."

Section 46 of the Environmental Protection Act specifically provides in part as follows:

"Any municipality or sanitary district which has been directed by an order issued by the Board or by a Court of competent jurisdiction to abate any violation of this Act or of any regulation adopted thereunder shall, unless said order be set aside upon petition for review, take steps for the acquisition or construction of such facilities * * * as may be necessary to comply with the order. The cost * * * shall be paid out of the funds on hand available for such purposes, or out of the general funds of such municipality or sanitary district not otherwise appropriated.

If funds on hand or unappropriated are insufficient for the purposes of this section, *the necessary funds shall be raised by the issuance of either general obligation or revenue bonds.* * * * [T]he necessary bonds may be issued as a direct obligation of such municipality or sanitary district and retired pursuant to the general law * * *. *No election or referendum shall be necessary for the issuance of bonds under this section.*" (Emphasis added.)

Furthermore, the Sanitary District Act of 1911, Section 9, Illinois Revised Statutes, 1971, Chap. 42, Paragraph 285, similarly provides as follows:

"* * * [T]he corporation may borrow money for corporate pur-

poses, and may issue bonds therefor, * * * *without holding an election or referendum upon the question,* if the corporation or the board of trustees thereof has been directed by an order issued by a court of competent jurisdiction or by an administrative agency of the State of Illinois having jurisdiction to issue such order, to abate its discharge of untreated or inadequately treated sewage, and such borrowing is deemed necessary by the board of trustees of the Sanitary District to make possible compliance with such order." (Emphasis added.)

Under the aforementioned statutory provisions it appears clear that the Pollution Control Board did have authority to order the District to abate its pollution, however, the District alleges that there is no direct statutory authority in the Board to order the District to issue any bonds. It cites the case of *Ruth v. Aurora Sanitary District* (1959), 17 Ill.2d 11, 20, 158 N.E.2d 601, wherein the Circuit Court of Kane County had directed the Aurora Sanitary District to abate certain illegal sewage discharges. The Sanitary District appealed from the court's order and alleged that, in order to comply with the order, it would be necessary that the Sanitary District issue general obligation bonds and that the Sanitary Water Board Act, authorizing the issuance of bonds without a referendum, was unconstitutional. The Illinois Supreme Court, in upholding the statute allowing the District to issue bonds without referendum, stated at page 20:

> "*The Court is not granted any powers or duties concerning the issuance of bonds. It only has the power to order the abatement of the discharge of untreated or inadequately treated sewage after it determines that such a discharge exists.* After the determination is made and and ordered abated, and only then, can the board of trustees make the decision whether borrowing to provide funds to carry out the court's order is deemed necessary. The legislature has thus provided the boards of trustees of sanitary districts a ready means of discharging their duty to preserve the public health, comfort and convenience by the issuance of bonds if they deem it necessary in order to comply with the court's order. In our opinion section 9 neither grants to the courts the right to legislate nor to impose a tax." (Emphasis added.)

■■ In the instant case, the order of the Board required the District to abate pollution and further ordered the District to issue sufficient bonds to comply with the abatement order. Under the *Ruth* case, the Pollution Control Board had no authority to require the District to issue general obligation or revenue bonds. Once the Board has ordered an abatement, the *Ruth* case holds that it is then up to the District to decide how it will

raise the money to comply with the order of the Board. We adhere to the *Ruth* case and decide that the Board does not have authority by Statute or otherwise to order the District to issue general obligation or revenue bonds without a referendum, however, since the District does not have sufficient funds on hand to comply with the Board's order to abate pollution, Section 46 of the Environmental Protection Act does authorize the District to issue bonds without referendum for this purpose.

■■ However, the District further urges that, assuming the order of the Board directing the District to abate pollution does authorize the District to issue bonds in order to comply therewith and is therefore proper under the Statute, then there are various statutory provisions which establish debt limitations upon the District and that that portion of the order which purports to give the District authority to issue up to $50,000,000.00 in bonds after July 1, 1971, is invalid as to any portion of said bonds which exceed the applicable debt limitations. At the time that the Environmental Protection Act became effective (July 1, 1970), the provisions of the 1870 Illinois Constitution were still in full force and effect. Section 46 of the Environmental Protection Act (Ill. Rev. Stat. 1970, ch. 111½, par. 1946), itself, specifically provides that the issuance of bonds necessary to finance programs to abate violations of the Environmental Protection Act shall "not raise the total outstanding bond indebtedness of such municipality or sanitary district in excess of the limit imposed upon such indebtedness by the Constitution of the State of Illinois." The 1870 Constitution contained a strict 5 per cent limitation on the indebtedness which a district could incur, as Ill. Const. of 1870, Article IX, Section 12, provided:

"No * * * municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein."

At the time that the Environmental Protection Act became law, the 1970 Illinois Constitution had not even been drafted and, therefore, the 5 per cent debt limitation of the 1870 Illinois Constitution was written into the Environmental Protection Act by reference. Both, section 9 of the Sanitary District Act of 1911 (Ill. Rev. Stat. 1971, ch. 42, par. 285) and the Environmental Protection Act, support petitioner's contention that the District is bound by the 5 per cent limit on bonded indebtedness. It is noted that in the 1971 General Assembly, HB 2262 and HB 2263 were introduced to except bonds issued pursuant to orders of the Pollution Control Board from the 5 per cent limitation of the 1911 Act but these measures failed to be adopted.

Based on the above reasoning, this Court holds that the portion of paragraph three of the March 31, 1971, Order authorizing bonds in excess of the 5% debt limitation of the District is invalid. It is therefore unnecessary to consider the constitutional objection to paragraph three raised by the District.

■■ The District further contends that the 2½ per cent bonded-debt limitation contained in the Sanitary District Act of 1911, is applicable and is a further basis for declaring paragraph three of the order of the Board invalid. As to this contention, it is held that the 2½% bonded-debt limitation applies only to non-corporate expenditures of the District and that, in this case, the expenditure would be for a valid corporation purpose of the District and therefore this provision is not applicable.

Apart from the challenge of Paragraph three of the Board's order, the District contends that the order is not an order to abate pollution as required by the Environmental Protection Act, but that it is an order on the District to issue bonds to construct necessary facilities to abate the pollution found to exist by the Board. Respondents aptly point out that the order of the Board deals with pollution and orders the District to cease and desist from such pollution and further it outlines for the District how said pollution can be abated. The Board in its order did not use the words "abate pollution", however, the Board did intend by the language used in paragraphs one and two of the order to make it clear that there was pollution and that it must be abated by the District. Both paragraphs one and two of the Board's order directed that the District "cease and desist from polluting".

The order of the Pollution Control Board is affirmed except as to the portions which direct the District to issue bonds up to $50,000,000.00 or as to any portion which would be interpreted as authorizing the District to issue bonds in excess of the 5% debt limitation. Furthermore, this cause is remanded to the Pollution Control Board in order that such modifications may be made in said order of March 31, 1971, as may be consistent with this opinion.

Affirmed in part, reversed in part and remanded, with directions.